**Steven Lynn COLLINS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–81–0349–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 25, 1982.

Discretionary Review Refused
June 30, 1982.

Clyde F. Dewitt III, Houston, for appellant.

Marqua McGull Billingsley, Channelview, for appellee.

Before EVANS, C. J., and STILLEY and DOYLE, JJ.

STILLEY, Justice.

Appellant, on a plea of no contest, was convicted of possession with intent to sell obscene devices. The trial court assessed punishment at 3 days and a fine of $500. We hold the trial court erred in overruling the motion to suppress evidence, and reverse the judgment below.

In his first ground of error appellant challenges the legality of the search that produced the rubber penises made the basis of this prosecution. In view of our disposition of this ground, the second and third grounds of error will not be reviewed. Sgt. Greenfield testified at the hearing on the motion that he is an officer with the Spring Valley Police Department, which has jurisdiction over the City of Hilshire Village. He stated that on May 31, 1980, he was routinely patrolling the 1000 block of Ridgeley Street in the City of Hilshire Village, and observed two automobiles parked in a no parking-tow away zone, that was so indicated by signs posted near the autos. He notified a private towing company to dispatch two wreckers to tow the autos. While the wreckers were hooking up the two autos, appellant emerged from a house across the street from the autos and approached Sgt. Greenfield. Appellant identified himself and inquired why the 1970 Ford was being towed. He also offered to pay the no parking fine to avoid having the vehicle towed. The officer further testified that while the two vehicles were being loaded, the owner of the other auto came out asking about his vehicle. Sgt. Greenfield testified: "I told him (the other driver) if he had anything in the vehicle, it was to go into the storage lot—to get it out of the vehicle." The officer did not recall if he discussed with appellant that appellant could do the same. The officer followed the two wreckers to the impound lot and

began an inventory of the 1970 Ford. He did not inventory the other vehicle as the owner had locked it before it was towed, and no valuables were visible within the auto. The officer searched the glove compartment and then ". . . looked in . . ." two folded plastic garbage bags on the back seat of the auto. The bags contained 84 rubber penises. The officer's testimony regarding how he determined the contents of the bags is conflicting, but resulted either from looking in the bags or realizing the contents of the bags by observing the devices as they pressed against the walls of the bags. After putting the bags in the patrol car he removed the back seat and crawled into the trunk, opening the trunk from the inside. The trunk contained a cardboard box containing 55 rubber penises, 3 plastic inflatable male and female genitalia, and assorted books and pictures. The officer took possession of these items, but left two wooden boxes and other items in the auto. The vehicle could not be locked as the passenger door window was missing.

Later that evening, after receiving an arrest order (capias) from the District Attorney's Office, the officer returned to appellant's home and arrested him.

At the conclusion of the suppression hearing the trial court sustained appellant's motion as to the contents of the auto's trunk, but overruled the motion as to the two plastic sacks found in the back seat of the auto.

By his first ground of error, appellant argues that the search of the auto and subsequent seizure of the devices violated the U.S. Constitution, Amendment IV; the Texas Constitution, Article 1, Section 9; and Tex. Code Crim.Pro.Ann. art. 38.23 (Vernon 1979). Appellant challenges both the legitimacy of the seizure of the vehicle and the subsequent search.

*South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), the landmark opinion on inventory searches, upheld inventory searches of autos that are performed pursuant to police procedures.

In *Opperman*, a local police department towed and inventoried an auto that was parked in a no parking zone. During the course of the search, Marihuana was recovered from the auto's glove compartment. The Court notes: "(t)he inventory was conducted only after the car had been impounded for multiple parking violations. *The owner*, having left his car illegally parked for an extended period, and thus subject to impoundment, *was not present to make other arrangements for the safekeeping of his belongings.*" (emphasis added) *Id.* at 375, 96 S.Ct. at 3100. Thus, the seizing of the auto was done pursuant to statutory authority vested in the police, as in the case at bar. However, unlike the instant case, the owner was unavailable to personally secure his personal property. Here, the appellant was present before the vehicle was towed away and was capable of moving the auto or removing his valuables, thus obviating the necessity of an inventory.

Texas cases dealing with inventory searches uniformly refer back to *Opperman* and its support of inventory searches under limited circumstances. In *Robertson v. State*, 541 S.W.2d 608 (Tex.Cr.App.1976), the police towed and inventoried an auto involved in an accident in which the driver was injured. In affirming the conviction the court cites an analogous case, *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), to illustrate the reasonableness of the search, stating: "(i)n *Cady*, defendant's vehicle was disabled as a result of an accident. Defendant was intoxicated and later comatose, and *therefore could not make arrangements to have the automobile towed and stored.*" (emphasis added) *Id.* at 611. In *Daniels v. State*, 600 S.W.2d 813 (Tex.Cr.App.1980), an auto was impounded and inventoried after the driver and occupants were arrested. The court notes: "(T)he appellant and his companions were placed under arrest. *There was no one to whom police could have given possession of the automobile.* (emphasis added). *Id.* at 814.

In *Evers v. State*, 576 S.W.2d 46 (Tex.Cr. App.1979), the appellant was placed under custodial arrest for a traffic violation. In discussing the circumstances mandating the impounding and inventory of the auto, the court notes: "(o)nce the appellant was arrested, the administrative caretaking function arose. The officers could either impound the car or leave it on the shoulder of a heavily travelled street where it would be subject to damage, vandalism or theft." *Id.* at 50.

Thus, in each case, an inventory of the contents of the auto, in order to secure the auto, was mandated either by the absence or disability of the owner or the lack of presence of some other person capable of assuming control over the auto and/or its contents.

There appears to be no Texas cases analogous to our facts. However, in *State v. Goodrich*, 256 N.W.2d 506 (Minn.1977), the driver of an auto was arrested for driving while intoxicated, but contacted relatives who appeared at the scene prior to the vehicle being towed or inventoried. Both relatives were apparently capable of taking possession of the auto. The court notes that in *Opperman*, "(t)here was no dispute as to the propriety of the act of impoundment itself. The case thus leaves open the issue presented here: whether impoundment was reasonable after the defendant had made other arrangements for disposition of the automobile." *Id.* at 509–510. In discussing the balancing of interests of the State and the defendant, the court states:

... the police will generally be able to justify an inventory, taken to safeguard the contents of the automobile, once the police have lawful custody of the vehicle. In determining whether an inventory search is reasonable, we must therefore look, as a threshold inquiry, to the propriety of the impoundment, since the act of impoundment gives rise to the need for and justification of inventory. If impoundment is not necessary, then the concomitant search is unreasonable. Accord, *State v. Boster*, 217 Kan. 618, 539 P.2d 294 (1975); *Altman v. State*, 335 So.2d 626 (Fla.App.1976); *State v. Bales*, 15

Wash.App. 834, 552 P.2d 688 (1976). The state's interest in impoundment must outweigh the individual's Fourth Amendment right to be free of unreasonable searches and seizures; although the expectation of privacy with respect to an automobile is significantly less than the traditional expectation of privacy associated with the home, this interest is still constitutionally protected, *South Dakota v. Opperman*, supra.

Id. at 510.

Although, as stated in *Opperman*, "[t]he authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge", *Opperman*, 428 U.S. at 369, 96 S.Ct. at 3097, it seems obvious that such authority pre-supposes the absence of the vehicle owner/operator who would be capable of removing the vehicle personally, as was the factual situation in *Opperman*.

In ruling on the reasonableness of a particular search, a court must weigh the governmental and societal interests advanced to justify such intrusions against the constitutionally protected interest of the individual citizen in the privacy of his effects. *Cady v. Dombrowski*, 413 U.S. 433, 447–448, 93 S.Ct. 2523, 2530–2531, 37 L.Ed.2d 706 (1973). In addition, ". . . whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case . . ." *Cooper v. California*, 386 U.S. 58, 59, 87 S.Ct. 788, 789, 17 L.Ed.2d 730 (1967).

The city ordinance in the instant case creating the no parking zone states: "(a)ny vehicle . . . parked in such prohibited area shall be deemed to be a traffic hazard, and *may* be removed by police officers." (emphasis added) We assume Sgt. Greenfield ordered appellant's vehicle towed to relieve what he considered to be a traffic obstruction. His authority to do so was volitional, not mandatory. When appellant appeared on the scene, prior to the vehicle being removed, the need to impound (and by necessity to search) the vehicle was negated. As a result, the State's interest in impounding the vehicle (to remove a traffic hazard) was significantly diminished in comparison to the appellant's expectation of privacy regarding the automobile. See, *United States v. Wilson*, 636 F.2d 1161 (8th Cir. 1980); *United States v. Davis*, 501 F.Supp. 23 (N.D.Ga.1980).

Subsequent to oral submission of this appeal, this Court received a State's supplemental brief that strenuously supports the validity of Sgt. Greenfield's decision to proceed with the towing, and subsequent search, of appellant's auto, despite the arrival of a person (appellant) capable of removing the vehicle from the street, and thus, obviating the necessity of the intrusive search and seizure of appellant's vehicle.

The State attempts to distinguish *Benavides v. State*, 600 S.W.2d 809 (Tex.Cr.App. 1980), from the facts of the instant case by catagorizing into two broad classes the impounding of vehicles: (1) circumstances where the vehicle itself is the violator of the statute; and (2) circumstances where an accused violates a statute while in possession of an auto. In *Benavides*, Dallas police officers were investigating an apparent murder and attempted suicide. Benavides was suspected of murdering his spouse and then attempting suicide. Incident to the investigation, the officers ascertained the make and model of the defendant's auto, located it some two blocks from the scene of the offense, and proceeded to "inventory" the contents prior to having the vehicle towed. The State attempted to justify the inventory on two grounds: (1) that a local ordinance prohibited the parking of a vehicle on a public street for over twenty-four hours; and (2) because the defendant was seriously injured and unable to move the vehicle, impounding was necessary to protect the vehicle. These arguments were dismissed under the reasoning that no violation of the twenty-four hour parking ordinance had yet occurred, no showing was made that towing a vehicle for such a violation was the usual procedure rather than just the issuance of a citation, and third, that the police had no legitimate interest in

protecting the vehicle (as they were not responsible for causing the vehicle to be left unattended).

In the instant case, the State argues that reasonable alternatives to towing must be considered by the police only when the facts fall within its latter catagory, i.e., when an accused is separated from his vehicle due to a custodial arrest. Thus, the State reasons, because appellant's *vehicle* was the violator, rather than appellant personally, our facts fall within the former category and no reasonable alternate to towing need be considered by the police. While we consider the distinction drawn by the State untenable, we note that the facts of both *Benavides*, supra, and *Opperman*, supra, are such that the State's first category would apply, as do the facts in the instant case. In both decisions cited above, the courts stress that "... in order for an impoundment to be lawful, the seizure of the automobile must be reasonable under the Fourth Amendment." *Benavides v. State*, 600 S.W.2d at 811.

The reasonableness of a seizure involves the balancing of interests of the accused and the State, and is dependent on the facts of each case. *Cady v. Dombrowski*, supra; *Cooper v. California*, supra. Had the appellant not appeared on the scene prior to the removal of the vehicle, the impoundment and coincident search of the vehicle would more justifiably be in furtherance of the State's interest in keeping public streets free of obstructions. However, because appellant *did* arrive at his auto prior to the auto being towed, the reasonableness of the search (incident to the towing) was significantly diminished.

The State advances several reasons why the reasonableness of the search was not diminished by appellant's arrival on the scene. The State first notes that appellant did not prove, at the scene, that he was the owner of the vehicle, which the State deems significant in view of the fact that record ownership of the vehicle was in another's name and that a wallet and checkbook belonging to a third person were on the front seat. We note that Sgt. Greenfield's testimony is conflicting regarding whether he knew the name of the record owner prior to towing the vehicle, and we assume Sgt. Greenfield was unaware of the name of the owner of the wallet and checkbook prior to ordering the vehicle towed. The State suggests that once the tow truck is summoned by the police, the vehicle owner's obligation to pay the towing charges arises and that unless the police authorize the tow truck driver to continue to the scene, hook up the vehicle, (despite the owner's presence) and tow it back to the company's yard, the towing company would have no way of compelling payment for its services. The State further notes the "rule" in Harris County that once a tow truck attaches the vehicle, the vehicle goes regardless of any other circumstance. We do not believe these considerations materially increase the State's interest in removing obstructions from public roadways. "[T]he Fourth Amendment protection against seizures cannot be whittled away by a police regulation." *Benavides v. State*, 600 S.W.2d at 812. Similarly, we believe that whatever interest the State (police) has in assisting a private towing company to compel payment of debts owed to the towing company is insufficient to overcome an individual's expectation of privacy in his automobile.

Under these facts the evidence was obtained pursuant to an unreasonable search and seizure and should have been suppressed. The first ground of error is sustained and the judgment reversed.