Keith Arnold BACKER, Appellant,

v.

The STATE of Texas, Appellee.

No. 68179.

Court of Criminal Appeals of Texas,
En Banc.

July 6, 1983.

Rehearing Denied Sept. 28, 1983.

Leonard C. Kahn, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Timothy G. Taft, Brad Beers and David Knight, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for possession of marihuana. Appellant was sentenced by the court to 3 days in jail and a $100.00 fine.

Appellant asserts in grounds of error two through four that the trial court erred in overruling his motion to suppress evidence since the search of his vehicle and subsequent seizure of marihuana were in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution. Appellant argues that the inventory search was a sham and a pretext for an unconstitutional exploratory search. Appellant urges that the inventory search was not made with his consent nor was he offered an alternative to the impoundment and inventory of his vehicle.

The record reflects that the appellant was stopped while looking for a parking space in the 3100 block of Terminal Road, a public street near the airport in Houston, by Houston police officers for an expired safety inspection sticker and plates. One of the officers ran a check and found an outstanding traffic warrant on appellant. The officers placed appellant under custodial arrest, impounded his vehicle and brought it to the airport police station. The officers then conducted an inventory search of the automobile. Marihuana was found inside the unlocked glove compartment of the automobile.

An inventory search need not be predicated upon the same requirements for probable cause or in obtaining a search warrant. Its existence rests upon the caretaking responsibility a police officer has towards a lawfully impounded automobile. *Gill v. State,* 625 S.W.2d 307, 319 (Tex.Cr. App.1980). In *Benavides v. State,* 600 S.W.2d 809 (Tex.Cr.App.1980), which the appellant and state cite, the court listed several instances where an automobile may be impounded and inventoried. One such instance is where "the driver is removed from his automobile and placed under custodial arrest and *no other alternatives* are available other than impoundment to insure the protection of the vehicle. *Evers v. State,* 576 S.W.2d 46 (Tex.Cr.App.1978); *Christian v. State,* 592 S.W.2d [625] (Tex.Cr. App.1980); *Daniels v. State,* supra." *Benavides,* supra. (Our emphasis).

Appellant argues that other alternatives were available rather than impoundment to insure the protection of appellant's vehicle. The record indicates that appellant stated he wanted to leave his car for use by a friend who was to arrive at the airport. The record reflects the officers attempted to contact the person appellant wanted his car left for, but were unable to do so. There being no apparent alternative and no one to remove the vehicle from its location on a public street, it was impounded within legitimate department policy as a caretaking function for the protection of the department as well as the vehicle and its contents. Although appellant's trial testimony at times conflicted with the officer's testimony on the motion to suppress, appellant did not testify at that hearing and therefore was not before the court when it overruled the motion. The trial court properly overruled appellant's motion to suppress the evidence seized in the inventory. See *Daniels v. State,* 600 S.W.2d 813 (Tex. Cr.App.1980). Appellant's grounds of error two through four are overruled.

Appellant asserts in his first ground of error that the trial court erred in failing to render a not guilty verdict for appellant since the marihuana was not admissible in evidence. Appellant asserts the search of his motor vehicle and subsequent seizure of the marihuana in the glove compartment was a violation of the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States. Therefore the evidence in the case was insufficient as a matter of law to support the conviction. For the reasons previously stated the marihuana was properly seized after discovery during an inventory of appellant's vehicle following his custodial arrest. The marihuana was properly admitted. The trial court did not err by not rendering a not guilty verdict. Appellant's first ground of error is overruled.

The judgment is affirmed.

TEAGUE, Judge, concurring.

I concur in the majority's implicit holding that pursuant to the Federal Constitution a valid inventory search occurred in this cause. I wish, however, that the majority had cited and discussed the more recent decisions of the Supreme Court of the United States, which interpret the Fourth Amendment to the Federal Constitution, as applied to "inventory searches of automobiles."

I am convinced that under its more recent decisions construing and interpreting the Fourth Amendment to the Federal Constitution, the Supreme Court of the United States would sustain the inventory search in this instance. For starters, see *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

The appellant does not invoke the Texas Constitution in this cause, but, instead, has only invoked the Federal Constitution. In my view, in light of how the Supreme Court has been recently interpreting the Fourth Amendment, appellant has made a poor choice of which Constitution to rely upon.

It is only when the Supreme Court sets minimum constitutional freedoms and guarantees, below those set by the highest State Court, that Art. VI of the Federal Constitution mandates that the members of this Court must adhere to and abide by its deci-

sions. However, should this Court opt to give the citizens of the State of Texas greater Constitutional rights and freedoms, then it is permitted to do so if it invokes and applies the Texas Constitution. In this instance, this Court may not invoke and apply the Texas Constitution because appellant does not rest his claim on the Texas Constitution, but, instead, rests his claim solely upon the Federal Constitution. He loses.

CLINTON, Judge, dissenting.

Once again a citizen loses his right to privacy in content of materials placed in a motor vehicle simply because he is alone while driving along a public way. See *Gary v. State,* 647 S.W.2d 646, 649 (Tex.Cr.App. 1983) (Clinton, J., dissenting).

The majority opines that there was "no one to remove the vehicle from its location on a public street," but we are not told that "the car was impeding the flow of traffic or that it was a danger to public safety," *Benavides v. State,* 600 S.W.2d 809, 812 (Tex.Cr.App.1980)—a rationale for authorizing police to seize vehicles off the street and impound them, *South Dakota v. Opperman,* 428 U.S. 364, 368, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000 (1976). So far as we are thus informed the motor vehicle still could have been parked legally and locked by appellant, content that it and his belongings were as safe and secure as might be reasonably expected in Houston.

However, my concern is not so much with how the majority has analyzed the situation as it is with the extent to which opinions of this Court have taken the "inventory search" doctrine beyond the facts found and law pronounced in its progenitor, *South Dakota v. Opperman,* supra.

As to the facts, to be recalled is the following account:

"Local ordinances prohibit parking in certain areas of downtown Vermillion, S.D., between the hours of 2 a.m. and 6 a.m. During the early morning hours of December 10, 1973, a Vermillion police officer observed respondents unoccupied vehicle illegally parked in the restricted zone. At approximately 3 a.m., the officer issued an overtime parking ticket and placed it on the car's windshield. The citation warned:

'Vehicles in violation of any parking ordinance may be towed from the area.'

At approximately 10 o'clock on the same morning, another officer issued a second ticket for an overtime parking violation. These circumstances were routinely reported to police headquarters, and after the vehicle was inspected, the car was towed to the city impound lot.

From outside the car at the impound lot, a police officer observed a watch on the dashboard and other items of personal property located on the back seat and back floorboard. At the officer's direction, the car door was then unlocked and, using a standard inventory form pursuant to standard police procedure, the officer inventoried the contents of the car, including the contents of the glove compartment which was unlocked. There he found marihuana contained in a plastic bag. All items, including the contraband, were removed to the police department for safekeeping. During the later afternoon of December 10, respondent appeared at the police department to claim his property. The marihuana was retained by police." [1]

Getting to the law, the opinion of the Court first reiterates the distinction it has traditionally drawn between automobiles and homes or offices in relation to the Fourth Amendment, in that there is considered to be a dimunition of an expectation of privacy in the motor vehicle, and then points out further that "automobiles are frequently taken into police custody" as part of "community caretaking functions," and subjected to "a routine practice of se-

---

1. In a note we have omitted, the opinion quoted testimony of the officer to the effect that he conducted an inventory for safekeeping "because we have had a lot of trouble in the past of people getting into the impound lot and breaking into cars and stealing stuff out of them," *id.,* 428 U.S. at 366, n. 1, 96 S.Ct. at 3095, n. 1.

curing and inventorying the automobiles' contents," *Id.*, 428 U.S. at 368–370, 96 S.Ct. at 3096–3097. The Supreme Court then surveyed decisions of state courts—Texas is not included—and federal courts that had "sustained inventory procedures as reasonable police intrusion," *id.*, 428 U.S. at 370–373, 96 S.Ct. at 3097–3099. It alluded to some of its own prior decisions which "point unmistakably" to the same conclusion, *id.* U.S. at 373–376, 96 S.Ct. at 3099–3100, including *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). Finally, the opinion of the Court sums up and holds:

"The Vermillion police were undisputably engaged in a caretaking search of a lawfully impounded automobile. [Citation omitted] The inventory was conducted only after the car had been impounded for multiple parking violations. The owner, having left his car illegally parked for an extended period, and thus subject to impoundment, was not present to make other arrangements for the safekeeping of his belongings. The inventory itself was prompted by the presence in plain view of a number of valuables inside the car. As in *Cady,* there is no suggestion that this standard procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive.

On this record we conclude that in following standard police procedures, prevailing throughout the country and approved by the overwhelming majority of courts, the conduct of the police was not 'unreasonable' under the Fourth Amend-

ment." *Id.,* 428 U.S. at 376–377, 96 S.Ct. at 3100–3101.[2]

In Texas, however, application of *South Dakota v. Opperman,* supra, to the facts of the very first case involving an "inventory" case divided the Court: *Robertson v. State,* 541 S.W.2d 608 (Tex.Cr.App.1976). The question framed in the opinion of the Court was:

"When a driver has a collision rendering the car inoperable and he is taken to a hospital because of injuries, is it reasonable for an officer to make an inventory of the property in the car to protect the owner and the officer and the wrecker service?"

To answer affirmatively the majority had to, and did, ignore certain facts deemed by the *Opperman* Court to be controlling. For instance, the inventory in *Opperman* was conducted "only after the car had been impounded" and "was prompted by the presence in plain view of a number of valuables inside the car." In *Robertson* an inventory was conducted at the scene of the accident before it was towed away by a private wrecking company driver who "would be responsible for it," without any indication that officers had seen any valuables in the car.[3] Thus, two significant deviations from *Opperman* were upheld, and the Court thereby set the stage for others.

Two years later *Robertson* was cited for the proposition that in inventory cases "the physical location of the impounded property is not relevant," *Evers v. State,* 576 S.W.2d 46, 49 (Tex.Cr.App.1978); without citing any authority it was also held of no moment that the officers conducting the "inventory"

**2.** The opinion of the Court is joined by Justice Powell with his own concurrence, expressing his satisfaction that the decision did not impair "the citizen's interest in the privacy of the contents of his automobile," *viz:*

"[T]he unrestrained search of an automobile and its contents would constitute a serious intrusion upon the privacy of the individual in many circumstances. But such a search is not at issue in this case. As the Court's opinion emphasizes, the search here was limited to an inventory of the unoccupied automobile and was conducted strictly in accord with the regulations of the Vermillion Police Department. Upholding searches of this

type provides no general license for the police to examine all the contents of such automobile." *Id.,* 428 U.S. at 380–381, 96 S.Ct. at 3102–3103.

**3.** In his dissenting opinion, Judge Roberts asserted, "There were no 'fruits or instrumentalities' of a crime or contraband in plain view in the automobile," *Robertson,* supra, at 612. Indeed, the inventory appears to have been made as a matter of course, so that only police and the wrecker company would have a list, for there is no suggestion that the driver would be furnished one. See *Robertson,* at 610.

did not reduce their findings to writing, *id.,* at 49–50. Just how any affected party was to be protected in his respective concerns is not explained. Obviously, the teachings of *Opperman* were being quickly forgotten.

What the Supreme Court ascertained to be "standard police procedures prevailing throughout the country" with respect to impounding disabled or illegally parked motor vehicles and thereafter making a written inventory of their contents has become a hodgepodge of local idiosyncrasy. See, e.g., *Evers v. State,* supra, at 49;[4] *Benavides v. State,* supra, at 811;[5] *Daniels v. State,* 600 S.W.2d 813, 815[6] (Tex.Cr.App. 1980); *Gill v. State,* 625 S.W.2d 307, 312[7] (Tex.Cr.App.1981); *Collins v. State,* 630 S.W.2d 890 (Tex.App.—Houston (1st) 1982, review ref'd): "[T]he 'rule' in Harris County [is] that once a tow truck attaches the vehicle, the vehicle goes regardless of any other circumstances." *Id.,* at 894. As practiced in this State, "inventory search" is already "a talisman in which presence of the Fourth Amendment or Art. I, Sec. 9, of the Texas Constitution fades away and disappears," *Gill v. State,* supra, at 318–319.

That a practice may not be "unreasonable" under the Fourth Amendment does not mean that every peace officer is authorized by law to engage in it. Before approving a purported "inventory search" appellate courts should require the State to spread upon the record a reproduction of officially promulgated authority for conducting one, in order that its validity may be determined. Because the Court does not in this case, I respectfully dissent.

MILLER, J., joins.

## OPINION TO DENYING APPELLANT LEAVE TO FILE MOTION FOR REHEARING

TEAGUE, Judge, dissenting.

Appellant correctly asserts in his motion for leave to file motion for rehearing, and motion for rehearing, that he was not only relying upon provisions of the Federal Constitution in support of his claim that the marihuana which was seized in this cause should not have been admitted into evidence, but also was relying upon Art. 1, Section 9 of the Texas Constitution.

Appellant's motion for leave to file his motion for rehearing should be granted because this Court has not yet discussed his contention that because of Art. 1, Sec. 9 of the Texas Constitution, the marihuana became inadmissible evidence.

Because the majority of this Court does not see fit to grant appellant leave to file his motion for rehearing, I must respectfully dissent.

CLINTON and MILLER, JJ., join.

4. "... Dallas Police Department had a policy requiring inventory of automobiles, once the driver was arrested."

5. "[I]t was standard operating procedure to take the vehicle of an accused into custody when the accused had been arrested"—there two or more blocks away from his legally parked and locked automobile—for its "safekeeping."

6. "The police would have been derelict in their duty if they had given possession of an automobile driven by an unidentified person to his companions without first determining the identity of the driver and the ownership of the vehicle."

7. Another wrecker company situation in which the State suggested that "an inventory was justified under the circumstances," though an inventory had actually not been conducted; the Court found (on rehearing) that while the car may have been lawfully impounded so as to permit "caretaking" functions regarding it, forcibly entering a locked trunk by removing the back seat was not one of them.