# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00643-CR

**Alfonso Parra, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. 2042790, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Alfonso Parra, Jr. was convicted by a jury of possession of less than one gram of heroin, and sentenced to one year confinement. *See* Tex. Health & Safety Code Ann. §§ 481.102, .115 (West 2003). In two issues, he contends that the evidence was legally and factually insufficient to support his conviction. We will affirm the judgment.

### BACKGROUND

On June 23, 2004, Corporal Dwayne Peed with the Austin Police Department was on routine patrol when he stopped at an intersection. As he proceeded through the stop, he saw a car approach the stop sign with its hazard lights on, but fail to stop before turning right. Peed turned to follow the car and noticed that the car had already pulled over to the side of the road. Peed pulled over, and appellant exited the car and began walking toward Peed. Peed observed that appellant

"was noticeably nervous," that "his hands were shaking tremendously," and "his voice was broken." In Peed's opinion, appellant "was very nervous, . . . very, very nervous." Appellant gave Peed his driver's license, and when Peed asked if appellant knew why he had been pulled over, appellant acknowledged that he had run the stop sign.[1] Peed notified appellant that he would receive a citation for running the stop sign, and asked appellant where he had been. Appellant told Peed that he was staying at the Country Garden Motel and that he was giving a ride to some friends, the two women that were in the car. Peed testified that the Country Garden Motel, "as well as several motels on the interstate in this area, are kind of known for prostitution, high drug activity." Peed had worked night shifts for the police department in that area, and there was "a lot of drug activity, a lot of prostitution calls, numerous disturbances, and it would normally involve alcohol or drugs or something along that nature."

Peed returned to his car and asked the police dispatcher if there were outstanding warrants for appellant's arrest; appellant had already admitted that he probably had some. The dispatcher notified Peed that there were warrants for appellant's arrest, one of which was for possession of drug paraphernalia. After Officer Robin Henderson arrived to assist Peed, appellant was arrested and placed in the back of Henderson's car.

The women did not leave appellant's car during the traffic stop. One woman was sitting in the front passenger seat, and one was in the back seat. Henderson talked to the women, and

---

[1] Appellant stated that the brakes on his vehicle did not function, and he could not stop.

Peed testified that they "pretty much stayed put. They were just sitting there. They weren't doing anything out of the ordinary."

After appellant was arrested and placed in Henderson's car, the officers conducted an inventory search as the car was impounded. *See Backer v. State*, 656 S.W.2d 463, 464 (Tex. Crim. App. 1983) (discussing inventory search). While conducting the inventory search, Peed found a "small, clear plastic baggie" under the front seat containing a substance that appeared to be heroin.[2] Peed gave the baggie to Henderson because she was transporting appellant to jail. However, Peed asked appellant "if what I found under his seat—asked him what it was and he told me it was heroin."

On cross-examination, Peed admitted that he did not know how long appellant had been driving the car or if appellant owned the car or had borrowed it from someone else. When asked if he could see what the women were doing inside the car, and whether he could tell if the baggie had been placed under the seat during the traffic stop while Peed was talking to appellant, Peed explained:

> First of all, there is a console—there is a hump in between the passenger side and the driver's side, so there is really—that type of movement I would have noticed. Any type of movement with her foot going over the hump and trying to push something, conceal something, I would have noticed that. I would have noticed any type of motion to discard something like that. When I—you conduct a traffic stop, you are

---

[2] Peed explained that a pen cap was inside the baggie, and inside the pen cap there was a little balloon. In Peed's experience, heroin is commonly packaged in small balloons. The balloon had been torn open, so Peed could see a small, brown substance resembling heroin inside the balloon. At trial, a forensic chemist who had tested the substance testified that it was, in fact, heroin.

3

very keen to what is going on inside the vehicle. Because especially when the driver immediately exits, that tells me that he doesn't want me up at the car. . . . So that ups my awareness as to what is going on. I am keeping an eye on him and then also the amount that he was shaking and the breaking of his voice showing that he was very nervous, that also upped my awareness level of what is going on. Keeping an eye on him, keeping an eye on the people in the vehicle, I would have noticed any kind of gross movement to discard or to conceal evidence. Because where I found the evidence was up under his seat. It wasn't on the side where someone—I can see what you are saying, if somebody pitches something like that, it might have landed on the side by the hump. But there is no way that she could have pitched something and it land in the middle under the seat. That could not have happened.

Henderson testified that when she arrived at the scene, Peed was talking to appellant. Peed asked Henderson to watch the passengers, which she did until appellant was arrested, then Henderson released the passengers. She assisted with the inventory search, where Peed located the heroin and released it to her custody. Henderson testified that she did not search the other passengers of the car.

The jury convicted appellant of possession of a controlled substance, and the court sentenced him to one year of confinement. *See* Tex. Health & Safety Code Ann. §§ 481.102, .115. This appeal followed.

## DISCUSSION

In two issues, appellant argues that there is legally and factually insufficient evidence that he possessed the heroin because he was not the only occupant of the car, and the other passengers were not interviewed or searched. Moreover, he contends, Peed could not see everything happening inside the car when appellant was outside of the car, and the passengers could have stashed the heroin under the seat while appellant was outside the car talking to Peed.

4

**Standard of review**

When assessing the legal sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the jury's verdict and determine whether, based on the evidence and reasonable inferences, a rational jury could have found the accused guilty of all of the elements of the offense beyond a reasonable doubt. *See Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005); *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005).

In a factual-sufficiency analysis, the evidence is viewed in a neutral light. *Drichas*, 175 S.W.3d at 799 (citing *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996)). There is only one question to be answered in a factual-sufficiency review: Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt? *Zuniga v. State*, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004). Even if we disagree with the jury's conclusions, we must exercise appropriate deference in order to avoid substituting our judgment for that of the jury, particularly in matters of credibility. *Drichas*, 175 S.W.3d at 799 (citing *Clewis*, 922 S.W.2d at 133). There are two ways in which the evidence may be insufficient: either the evidence supporting the finding, considered alone, is too weak to support the jury's finding beyond a reasonable doubt or the contravening evidence may be so strong that the State could not have met its burden of proof. *Id.* (citing *Zuniga*, 144 S.W.3d at 484-85).

To prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband. *Poindexter*, 153 S.W.3d at 405. Whether the evidence is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's

5

connection with the drug was more than just fortuitous. This is the whole of the so-called 'affirmative links' rule." *Id*. at 405-06 (quoting *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)). Such affirmative links need to be established only when the accused was "not in exclusive possession of the place where the substance is found." *Id*. at 406 & n.18; *Martin v. State*, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988). Each defendant must be affirmatively linked with the drugs he allegedly possessed, but this link does not have to be so strong that it excludes every other outstanding reasonable hypothesis except the defendant's guilt. *Brown v. State*, 911 S.W.2d at 748.

The intentional and knowing possession of a controlled substance does not turn on whether the controlled substance is in plain view. *Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995). This affirmative link can be established by showing additional facts and circumstances that demonstrate the accused's knowledge and control of the contraband, *Norman v. State*, 588 S.W.2d 340, 342-43 (Tex. Crim. App. 1979), including that the narcotic was conveniently accessible to the accused, *Hahn v. State*, 502 S.W.2d 724, 725 (Tex. Crim. App. 1973); that the accused was the driver of the automobile in which the contraband was found, *Aldridge v. State*, 482 S.W.2d 171, 173 (Tex. Crim. App. 1972); and that the contraband was found on the same side of the car seat as the accused was sitting, *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981), and *Orosco v. State*, 298 S.W.2d 134, 136 (Tex. Crim. App. 1957). In deciding whether the evidence sufficiently establishes an affirmative link between the accused and the contraband, the trier of fact—the jury in this case—is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *Poindexter*, 153 S.W.3d at 406.

6

**Analysis**

Appellant asserts that the evidence is legally and factually insufficient to support his conviction because the evidence does not sufficiently affirmatively link him to the heroin. We disagree. The evidence in this case includes several additional facts and circumstances that demonstrate appellant's knowledge and control of the heroin. *See Norman*, 588 S.W.2d at 342-43.

First, appellant admitted that he knew the baggie contained heroin, even if he did not explicitly acknowledge ownership of it. Moreover, the baggie containing heroin was conveniently accessible to appellant because it was located under the driver's seat of the car that appellant was driving. *See Hahn*, 502 S.W.2d at 725; *Aldridge v. State*, 482 S.W.2d at 173; *see also Deshong*, 625 S.W.2d at 329; *Orosco*, 298 S.W.2d at 136. Furthermore, as the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony, the jury was entitled to believe Peed's testimony that: (1) he was watching the other passengers in the car, (2) they were not moving, (3) he would have seen any attempt by them to stash the drugs in the manner suggested and in the location where the drugs were found, and (4) that "there is no way that [a passenger] could have pitched something and it land in the middle under the seat. That could not have happened." *See Poindexter*, 153 S.W.3d at 406. This testimony supports the jury's finding of an affirmative link between appellant and the heroin.

Appellant also asserts that there was no evidence that he owned the car, how long he had been driving it, or the identity of the passengers. However, when questioned regarding what was in the baggie, appellant responded that it was heroin—a fact later confirmed by scientific testing. Appellant argues that his statement is not sufficient evidence because he did not say it was *his*

7

heroin—he merely provided an accurate identification of the substance. We disagree. Based on the circumstances discussed above—including that appellant was driving and in control of the car; the heroin was discovered under the middle of the driver's seat; appellant appeared "very, very nervous" talking to Peed; appellant's hands "were shaking tremendously"; his "voice was broken"; the heroin was easily accessible to appellant; and that Peed testified that the passengers in the car could not have placed the heroin where it was found or he would have seen it—we conclude that the evidence was sufficient for reasonable jurors to find that appellant was affirmatively linked to the heroin.

Appellant also argues that his case is controlled by *McGoldrick v. State*, in which the court of criminal appeals reversed a conviction for unlawful possession of a controlled substance based on insufficient evidence. *See* 682 S.W.2d 573, 580 (Tex. Crim. App. 1985). Since *McGoldrick*, the court of criminal appeals has noted that many "opinions hold that an affirmative link between the accused and the drugs is necessary to exclude 'the reasonable hypothesis that appellant was entirely unaware of the presence of [the drugs]." *Brown*, 911 S.W.2d at 746-47 (citing *Humason v. State*, 728 S.W.2d 363, 367 (Tex. Crim. App. 1987) and *McGoldrick*, 682 S.W.2d at 573)). These cases "should not, however, be taken to mean that circumstantial evidence of a defendant's guilty knowledge was required to meet the same rigorous criteria for sufficiency as circumstantial proof of other offensive elements." *Brown*, 911 S.W.2d at 746-47. Cases relying on the "outstanding reasonable hypothesis" standard no longer control. *Id*. at 748. Appellant argues that the mere fact that he was in the *presence* of heroin does not mean he illegally *possessed* it. *See Olguin v. State*, 601 S.W.2d 941, 943 (Tex. Crim. App. 1980). Although that is possible, we find

that the facts in this case, as discussed above, prove that appellant was in possession of, rather than in the mere presence of, heroin.

Viewing all of the evidence in the light most favorable to the jury's verdict, we hold that, based on the evidence and reasonable inferences, a rational jury could have found appellant guilty of all of the elements of possession of a controlled substance beyond a reasonable doubt. Moreover, considering all of the evidence in a neutral light, we hold that the jury was rationally justified in finding appellant guilty beyond a reasonable doubt. *See Zuniga*, 144 S.W.3d at 484-85. We overrule appellant's first and second issues.

## CONCLUSION

Having overruled appellant's issues, we affirm the judgment of the district court.


_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   June 15, 2006

Do Not Publish

9