ACCEPTED
12-14-00298-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
1/10/2015 12:03:08 PM
CATHY LUSK
CLERK

# Court of Appeals
## State of Texas
## Twelfth Supreme Judicial District
## Tyler, Texas

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS

1/10/2015 12:03:08 PM

CATHY S. LUSK
Clerk

12-14-00298-CR

Robert Eugene Pritchett
Appellant
VS.
The State of Texas
Appellee

On Appeal from the 273rd District Court
San Augustine County, Texas
Trial Cause No. CR-13-8411

APPELLANT'S BRIEF

Respectfully Submitted,

DONOVAN PAUL DUDINSKY
Texas State Bar No. 24038869
701 South Liberty Street
San Augustine, Texas 75972
Tel.  (936) 275-9871
Fax. (936)-275-9655
E-Mail: dpauldudinsky@yahoo.com

ATTORNEY FOR APPELLANT

SUBMITTED FOR REVIEW
(Oral Argument Not Requested)

# I. IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of all parties to the trial court's judgement or order appealed from, and the names and addresses of all trial and appellant counsel:

Parties:       Appellant         Defendant - Robert Eugene Pritchett

Trial Counsel:                   For Defendant, Robert Eugene Pritchett
                                 Donovan Paul Dudinsky
                                 Rudy Valesquez

Appellate Counsel:               For Appellant: Donovan Paul Dudinsky
                                 701 South Liberty Street
                                 San Augustine, Texas 75972

Appellee Counsel:                For Appellee: J. Kevin Dutton, District Attorney
                                 P. O. Box 714
                                 San Augustine, Texas 75972

Trial Judge:                     Honorable Judge Charles Mitchell
                                 273rd Judicial District
                                 San Augustine, Texas 75972

## II.  TABLE OF CONTENTS

I.          IDENTITY OF PARTIES AND COUNSEL.................2

II.         TABLE OF CONTENTS..............................3-4

III.        INDEX OF AUTHORITIES...........................5-9

IV.         STATEMENT OF THE CASE......................11-12

V.          ISSUES PRESENTED FOR REVIEW........................13

VI.         ARGUMENT AND AUTHORITIES...........................14-55

VII.        STATEMENT OF FACTS...........................
            Point of Error No. 1.....................................14
            Point of Error No. 2.................................18-24
            Point of Error No. 3.................................32-34
            Point of Error No. 4.................................36-38
            Point of Error No. 5.................................44-47

VIII.       SUMMARY OF ARGUMENTS.................................
            Point of Error No. 1.................................14-15
            Point of Error No. 2.................................25
            Point of Error No. 3.................................34
            Point of Error No. 4.................................38-39
            Point of Error No. 5.................................47-48

IX.         ARGUMENTS............................................
            Point of Error No. 1.................................15-18
            Point of Error No. 2.................................25-31
            Point of Error No. 3.................................34-36
            Point of Error No. 4.................................39-44
            Point of Error No. 5.................................48-55

X.          CONCLUSION.......................................56-57

XI.           PRAYER......................................................................58

XII.         CERTIFICATE OF SERVICE.....................................58

XIII.       CERTIFICATE OF COMPLIANCE............................58

XIV.       APPENDIX....................................................................60

# III. INDEX OF AUTHORITIES

**FEDERAL CASES:**

*Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct 763,
766, 31 L.Ed2d 104 (1972)
*Giglio* at 154..................................................................15, 26, 28

*United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct.2329,
2401, 49 L.Ed2d 342 (1976)............................................15, 16, 17

*Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct 837,
51 L.Ed2d 30 (1977)..................................................................16

*Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194,
10 L.Ed2d 215 (1963)................................................................16

*United States v. Bagley*, 473 U.S. 667,
105 S.Ct.3375, 87 L.Ed2d 481 (1985)..............................16, 17, 30

*Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct.1555,
131L.Ed2d 490 (1995)...........................................17, 18, 26

*Higgs*, 713 F.2d at 42.............................................................26

*Alcortav v. Texas*, 355 U.S. 28, 31, 78 S. Ct. 103, 105,
2L.Ed2d 9 (1957).....................................................................28

*United States v. Gengler*, 574, F. 2d. 730, 735
(3d Cir. 1978)..........................................................................28

*South Dakota v. Oppperman,* 428 U.S. 364, 96 S Ct. 3092,
49 L.E.2d 1000 (1976)........................................................40, 41, 51

*Cady v. Dombrowsky*, 413, U.S. 433, 93 S.Ct. 2523,
37 L.Ed.2d 706 (1973)..................................................................41

*Coolidge v. New Hampshire,* 403 U.S. 433, 461,
91 S.Ct. 2022,2035, 29 L.Ed.2d 564 (1971).................................41

*Brendlin v. California,* 551 U.S. 249, 127 S.Ct. 2400,
168 L.Ed.2d 132 (2007)...............................................................49

*California v. Hodari,* 499 U.S. 621,111, S.Ct 1547,
113 L.Ed.2d 690 (1991)...............................................................49

*New York v. Belton,* 452, U.S. 454, 101 S.Ct 2860,
69 L.Ed. 728 (1981).....................................................................50

*Arizona v. Gant,* 556 U.S. 332, 129 S.Ct. 1710,
Ld.2d 485, 47 A.L.R. Fed.2d 657 (2009)
*Gant* at 1723...............................................................................50

**STATE CASES:**

*Thomas v. State*, 841 S.W. 2.d 399, 404 (Texas Crim. App. 1992)
and 841, S.W.2d at 403.............................................................26, 30

*Garza v. State,* 137 S. W.3d 878, 882 (Tex.App.-Houston
[1st Dist.] 2004, pet. Ref'd)..........................................................40

*Collins v. State,* 630 S.W.2d 890 (Tex.App. 1982 pet. ref'd)..............41, 54

*Sandal v. State,* 253 S.W.2d 283 (Tex.Cr.App.1952).........................41, 54

*Broughton v. State,* 643 S. W.2d 147 (Tex.App. 1982 no. pet.)..........41, 54

*Gauldin v. State,* 649 S. W.2d 411 (Tex.Cr.App. 1984).....................42, 54

*Pearson v. State, 649 S. W.2d 786*
*(Tex.Cr.App. 1983, pet. ref'd)*...................................................*42, 54*

*Evers v. State,* 576 S.W.2d 46 (Tex.Cr.App. 1978)..........................*42, 52, 54, 55*

*Benevides v. State, 600 S. W.2d 809 (Tex.Cr.App. 1980)*..................*42, 52, 54*

*Christian v. State, 592 S. W.2d 359 (Tex.Cr.App. 1980)*...................*42, 52*

*Daniels v. State, 600 S.W.2d 809 (Tex.Cr.App. 1980)*.....................*42*

*Jonathan Eugene Redmond v. State*, (No. 05-09-01461-CR)
*(Tex.App. - Dallas 2011)*.................................................................*43*

*Mayberry v. State, 830 S. W.2d 176, 180*
*(Tex.App. - Dallas 1992, pet. ref'd)*.................................................*43*

Tex.R.APP.Ann 81(b)(2). Pamp. 1989................................................*44*

*Gauldin v. State, 683 S. W.2d at 415*...............................................*44*

*Fenton v. State, 785 S. W.2d 443 (Tex.App.- Austin 1990)*...............*44, 52*

*Russell v. State, 717 S. W.2d 7, 9, (Tex.Cr.App 1986)*.....................*49*

*Telshow v. State, 964 S. W.2d 303, 307*
*(Tex.App.- Houston [14th Dist.] 1998 no pet.)*.................................*49*

*White v. State, 871 S. W.2d 833, 836-37*
*(Tex.App. - Houston [14th Dist.] 1994, no pet.)*..............................*49*

*Highwarden v. State, 864 S.W.2d 479, 481 & n.*
*(Tex.App. - Houston [14th Dist.] 1993) pet. dism's as*
*improvidently granted, 871 S. W.2d 726 (Tex.Cr.App. 1994)*.........*49*

*Nottingham v. State,* 908 S. W.2d 585
*(Tex.App.- Austin 1995)*..............................................................49

*Medford v. State,* 13 S. W.2d 769 (Tex.Cr.App. 2000).........................49

*Granados v. State,* 85 S.W.3d 217 (Tex.Cr.App. 2002).....................50

*Gill v. State,* 625 S. W.2d 307, 319 (Tex.Cr.App. 1980).......................51

*Delgado v. State,* 718 S. W.2d 718, 721 (Tex.Cr.App. 1986)...............51

*Backer v. State,* 656 S. W.2d 463 (Tex.Cr.App. 1983)...........................52

*Mayhood v. State,* 699 S. W.2d 873, 874
*(Tex.App. 1984 pet. Ref'd)*...............................................................54

*State v. Giles,* 867 S. W.2d 105, 108
*(Tex.App. - El Paso, pet, ref'd)*...........................................................55

**Statutes**

*14th Amendment of the United States* Constitution.............................13, 26

*4th Amendment of the United States Constitution*.................................13, 36, 39,40, 41

*Texas Transportation Code 544.010 Subparagraph ( c )*
......................................................................13, 19, 20, 25,26, 32,33, 34, 35

*Texas Constitution Article 1 Section 9*.........................13, 19, 25, 36, 39, 48, 55,56

*Code of Criminal Procedure Article 39.14*.........................................17

*Code of Criminal Procedure Article 2.01*.........................................17

*Texas Rules of Evidence 803 (6)*.......................................................18

*Texas Rules of Evidence 902 (10)*..........................................................*18*

*Texas Rules of Civil Procedure 21a*......................................................*18*

*Leg. H. Stat. 1995 74th Leg. Sess. Chapter 165,*
*effective September 1, 1995*.............................................................*20, 35*

*Texas Code of Criminal Procedure 38.23 ( a )*...............................*38, 39, 48*

Case No. 12-13-00298 CR

IN THE
COURT OF APPEALS
TWELFTH SUPREME JUDICIAL DISTRICT
TYLER, TEXAS

**************************************************************

ROBERT EUGENE PRITCHETT
Appellant

V.

THE STATE OF TEXAS
Appellee

**************************************************************

On Appeal From the 273rd Judicial District

************************************

TO THE HONORABLE JUDGES OF SAID COURT:

Comes now Robert Eugene Pritchett, Defendant in a proceeding in the 273rd Judicial District Court of San Augustine County, Texas and desiring to prosecute an appeal from his conviction in that proceeding, respectfully submits this brief in appeal of same. For clarity, reference in this brief to Robert Eugene Pritchett will be by "Appellant" and reference to the State of Texas will be by "Appellee" unless the context or consideration of style dictate otherwise.

## IV. STATEMENT OF THE CASE

On the 4th day of August , 2014 a Motion To Suppress (Evidence Obtained From Illegal Detention and Illegal Impoundment and Inventory) was filed with the Court by Appellant's attorney. See Appendix "A".

On the 4th day of August, 2014, before presiding judge Hon. Charles Mitchell presiding in the 273rd District Court of San Augustine County, Texas, San Augustine, Texas, a jury was selected and sworn and empaneled and a trial commenced on the merits of the felony prosecutor's case against the Defendant, Robert Eugene Pritchett, who and being accused of committing two felony offenses of and pertaining to Possession of a Controlled Substance in a School Zone and Tampering with Evidence.

On the 5th day of August, 2014, the case went to jury deliberation and the jury eventually returned verdicts in which and finding Defendant guilty of Possession of a Controlled Substance and finding Defendant Not Guilty of Tampering with Evidence.

On September 10, 2014, the Defendant and counsel appeared at the punishment phase of the trial and the court assessed punishment consisting of Defendant being placed on community supervision for a period of five years and Defendant ordered

to pay a fine in the amount of $3,000.00 and Defendant ordered to pay a restitution amount of $140.00.  See Appendix "B" "Judgement of Conviction By Court". Immediately after the conclusion of the punishment hearing counsel for Defendant filed the Trial Court's Certification of Defendant's Right of Appeal.  See Appendix "C".

On October 7, 2014, counsel for Defendant filed Defendant's Written Notice of Appeal. See Appendix "D".  This case is proper before this Honorable Court.

# V. ISSUES PRESENTED FOR REVIEW

**POINT OF ERROR 1.**

**The State has a constitutional duty under the due process clause or the Fourteenth Amendment to disclose any material evidence that is favorable to defense.**

**POINT OF ERROR 2.**

**Appellant was denied due process of law when the State agents, The City of San Augustine, Texas, Police Department destroyed and or failed to preserve Material Exculpatory evidence of a video/ audio recording of the Alleged Traffic Violation, Detention, Impoundment and Inventory search of the Appellant that form the basis of the conviction.**

**POINT OF ERROR 3.**

**The trial court abused its discretion sustaining prosecution's objection to defense motion to read into the record the relevant section of the Transportation Code for the jury's understanding as it applies to motorist stopping at intersections.**

**POINT OF ERROR 4.**

**Appellant's Constitutional Rights were violated under the Fourth Amendment of the United States Constitution and Article I, Section 9 of the Texas Constitution when the reasonable alternatives that were available to impoundment were not implemented.**

**POINT OF ERROR 5.**

**The inventory search of Appellant's vehicle was an illegal unconstitutional investigative search for evidence in violation of Article 1, Section 9 of the Texas Constitution.**

# VI. ARGUMENT AND AUTHORITIES

## POINT OF ERROR NO. 1

**The State has a constitutional duty under the due process clause or the Fourteenth Amendment to disclose any material evidence that is favorable to defense.**

## VII. STATEMENT OF FACTS

The foregoing statements of facts are incorporated herein by references for all purposes. Facts regarding non-response to defense counsel's subpoena.

On July 8, 2014, defense counsel submitted a subpoena to the San Augustine Police Department specifically requesting an authentic copy of the established written policy governing the department's rules of impoundment procedure and production of authentic copies of the audio/visual film of the officer's pursuit prior to and during Appellant's detention. (RR: Vol. 3, P. 75)

## VIII. SUMMARY OF ARGUMENT

Under established Texas law, the failure to turn over material, exculpatory evidence is a violation of due process, regardless of whether the State acted in bad faith. In this case, the officer who arrested Appellant, testified that he thought the police department had an established policy governing impoundment; but he was unsure because he did not have a copy with him in court. The officer further testified

to having a video camera in his patrol unit that was activated and recording Appellant's vehicle as the officer pursued/followed the Appellant. The officer testified that he stopped Appellant for not stopping at a designated point at a stop sign at an intersection, and the officer testified that Appellant had also improperly stopped in the middle of the intersection. Appellant argued in defense of officer's reason for the stop based upon the traffic code, and Appellant argued in defense of the video the officer maintained existed but was lost pursuant to a computer crash. The video recording of the following/pursuit of Appellant was material, exculpatory evidence and the failure to preserve it was a violation of Appellant's due process rights.

## IX. ARGUMENT

Exculpatory evidence includes material that goes to the heart of the defendant's guilt or innocense as well as that, which might well alter the jury's judgement of the credibility of a crucial prosecution witness. *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct 763, 766, 31 L.Ed2d 104 (1972). Evidence impeaching the testimony of a government witness is exculpatory when the credibility of the witness may be determinative of criminal defendant's guilt or innocence. *Giglio* at 154. If the exculpatory evidence "creates a reasonable doubt" as to the defendant's culpability, it will be held to be material. *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct.2329,

Appellant's Brief
Robert Eugene Pritchett                    Page 15 of 60

2401, 49 L.Ed.2d 342 (1976).

In this case, defense counsel submitted a subpoena to the custodian of San Augustine Police Department on July 8, 2014, thirty-five days before the trial held on August 4, 2014. At trial, Officer Brazeal testified that he was in charge of administrative duties which included handling subpoenas received at the department. The officer admitted that he received a subpoena requesting the department's impoundment policy and other production. The officer further stated that he was told by the district attorney's office not to release information. (RR: Vol. 3, P. 75, 76, 77, L. 8-25, 1-25, 1-8). The district attorney's rebuttal closing alluded to the code of criminal procedure regulating discovery claiming defense's subpoena was not in conformance therewith and therefore, seemingly, of no consequence. (RR: Vol. 3, P. 109, 110, L. 11-25, 1-13).

There is no general right to discovery in criminal cases. *Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct 837, 51 L.Ed2d 30 (1977). However, the State has a constitutional duty under the Due Process Clause of the United States Constitution to disclose to defendant any material evidence that is favorable to the defense for trial or a sentencing hearing. *Brady v. Maryland,* 373 U.S.83, 83 S.Ct .1194, 10 L.Ed.2d 215 (1963); *United States v. Agurs,* 427 U.S. 97, 96 S.Ct.2329, 49 L.Ed.2d

342 (1976); *United States v. Bagley,* 473 U.S. 667, 105 S.Ct.3375, 87 L.Ed.2d 481(1985); *Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

This standard of materiality applies regardless of whether the defense makes a specific request for certain material, a general request for discoverable material, or no request for disclosure of favorable evidence. Although the Court's opinion in *Bagley* was a plurality opinion, a majority adopted this approach in *Kyles.* Knowledge of materially favorable evidence in law enforcement files or known to law enforcement officers is imputed to the prosecutor. Therefore, a constitutional violation can occur when the prosecutor is unaware of evidence in law enforcement files. *Id.*

The prosecutor insisted at trial that because defense didn't follow or adhere to discovery pursuant Code of Criminal Procedure Article 39.14 (through specific article not referenced in court), defense was not entitled to release nor receipt of information requested. (RR: Vol. 3, P.109, 110, L. 11-15, 1-13).

The Code of Criminal Procedure Article 2.01 refers to the duties of the district attorney.

"....[I]t shall be the primary duty of all prosecuting attorneys, including any special prosecutors, not to convict, but to see that justice is done. They shall not

suppress facts or secrete witnesses capable of establishing the innocence of the accused."

Defense's subpoena included request for certain business records of the police department and request for information particularly pertaining to impound policy was requested and intended to be introduced at trial under Tex.R.Evid. 803(6) without a sponsoring trial witness through the use of an affidavit as provided for in the Tex.R.Evid.902(10), and notice of introduction would have been given to prosecution pursuant to Rule 21a Tex.R.Civ.Pro. At least 14 days prior to the commencement of the trial. "Knowledge of materially favorable evidence in law enforcement files or known to law enforcement officers is imputed to the prosecutor." *Kyles,* Supra.

Defense counsel's subpoena sought to legally discover business records information that may have been pertinent and material to defense; and admit such evidence under the Texas Rules of Evidence pursuant to the Texas Rules of Civil Procedure in a criminal trial. The decision to deny defense's subpoena in behalf of the accused was a violation of Appellant's due process rights.

**POINT OF ERROR NO. 2**

**Appellant was denied due process of law when the State through its agents, San Augustine Police Department destroyed and or failed to preserve Material Exculpatory evidence of a video/ audio recording of the Alleged Traffic Violation, Detention, Impoundment and Inventory search of the Appellant that**

**form the basis of the conviction.**

## VII. STATEMENT OF FACTS

The night of Thanksgiving November 24th, 2011, around 8:52 pm, in the City of San Augustine, Texas. Office Sowell testified that his digital video, recorded the following of the Appellant's vehicle through a residential neighborhood for over a half a mile. Officer Sowell alleged the Appellant stopped improperly at the intersection of Hospital Street and North Milam Street, that lead to the detention and arrest of the Appellant for failure to display driver licence and subsequent impoundment and inventory search of Appellant's vehicle.

Appellant's Attorney made an objection on the admissibility of the evidence. The roadside detention was in violation of the Transportation Code 544.010, Subparagraph ( c ); and it violated Article 1, Section 9 of the Texas Constitution. Therefore, the evidence the State is trying to offer is inadmissible. The Court: The objection was overruled. (RR: Vol. 2, Page 32, Lines 4-13).

The Appellant argues that the arresting Officer had no probable cause or reasonable suspicion to stop the Appellant. Appellant argues he stopped properly at the intersection of the alleged traffic violation. The Appellant stopped properly according to The Texas Transportation Code, relevant section of Code 544.010 - Stop

Signs and Yield Signs - Subparagraph ( c ) An operator required to stop by this section shall stop before entering a crosswalk on the near side of the intersection. In the absence of a crosswalk, the operator shall stop at a clearly marked line. In the absence of a stop line, the operator shall stop at the place nearest the intersecting roadway where the operator has a view of approaching traffic on the intersecting roadway." Leg. H. Stat. 1995 74[th] Leg. Sess. Ch. 165, effective September 1, 1995.

In Officer Sowell's testimony, Officer declined to answer important questions vital to the defense, without referring the video. Officer Sowell's reference to the video and his inability to answer questions on cross examination, without the video, shows the video contained exculpatory evidence which was vital to the defense, which violated Appellant's due process and a right to a fair trial.

The foregoing statement of fact are based on trial court testimony of the San Augustine Police Department, Police Officers.

The State's Attorney in direct examination of Officer Jonathon Sowell.

Q. Do you remember what Mr. Pritchett was wearing that night?

A. No, Sir. I would have to review video. It's been nearly three years and - -

Q. All right.

States Attorney: I pass the witness. ( RR: Vol. 2 p.44, L. 17-22 ).

Appellant's Attorney begins cross examination of Officer Sowell. (RR: Vol. 2, P. 45).

Q. Okay. Now, while you were following him on the hunch, did you have a video going?

A. Yes, sir, video was going.

Q. So you have a video that we could see regarding your following him?

A. No, sir, I do not.

Q. So I guess the answer is: You didn't have a video of the following?

A. It was going. Our computer hard drive crashed at the police department and lost the video. (RR: Vol. 2, P. 73, L. 6-17)

Officer Sowell looking at defense Exhibits 3, 4 and 5. Appendix No. "E".

A. - - There would be a line, and that is your designated stop point, the white line. I'm unsure without my video if that line was actually present at that night.( RR: Vol. 2 p.75, L. 22-24 ).

A. - - I wish there was a video I could show you.

Q. But we don't have a video, do we?

A. And I'm sorry about that. But - - ( RR: Vol. 2 p.77, L. 3-10 ).

Q. At the time when he said he didn't have his driver's license - -

A. I'm not sure about the time frame on that. I would have to have the video or it would have to be stated in my report. But - - ( RR: Vol. 2 p.80, L. 11-15 ).

Q. But we can't show members of the jury where you claim he stopped, can you?

A. Not without the video, no, sir. ( RR: Vol. 2 p.82, L. 13-15 ).

Q. At that point in time, you ask him if you can search his vehicle. It's not in your report. I'm asking you - -

A. Then I can't - - without a video I'm not going to testify to that question. Because I'm unsure, sir. Like you said, that's been nearly three years ago. ( RR: Vol. 2 p.84, L. 15-20 ).

The audio portion contained in the video, you could have heard Officer Sowell asking Appellant to search his vehicle.

Q. But being the general vicinity where you pulled the vehicle over?

A. Yes, sir - -

Q. - - it was on video - -

A. If I had a video, I could point you exactly where he was stopped. ( RR: Vol. 2 p.90, L. 25 and p. 91, L. 1-5 ).

A. I'm unsure. It was stopped. But I'm unsure that it was on a curve or in the road. Without video I would not know. ( RR: Vol. 2 p.91, L. 16-18 ) .

The video would clearly show that the Appellant's car was properly parked along this portion of Hospital Street, the place of detention. The video would also clearly show that this portion of Hospital Street is straight.

States Attorney redirects examination of Officer Sowell.

Q. Been a lot of comment about the video crashed the video not being available?

A. Yes. Sir.

Q. The video not being available, being destroyed, being lost, being cyberspace, being wherever it goes then they crash, that does not take anything away from the truth or veracity of what you put in your report?

A. No, Sir.

I have no further questions. `( RR: Vol. 2 p.112, L. 25- p. 113, L. 1-8 ) .

Appellant's Attorney begins re-cross examination of Officer Sowell.

Q. There is no video of where it is alleged he parked wrongfully in an intersection. True or not true?

A. True, there is no video. (RR: Vol. 2, P. 114, L. 7-9)

The State called Officer James Blackwell as there next witness.

Appellant's Attorney begins cross examination of Officer Blackwell on the video issues.

Q. Okay. So what we have here is so-called crime scene, and it's not normal to take pictures?

A. Well, there generally would be a video from the patrol car recording the entire scene, documenting everything real time. (RR: Vol. 3, P. 43, L. 9-13)

Q. Okay. Do you have any idea whether Officer Sowell logged the videotape on his patrol car into evidence?

A. No, sir, because I was on an antique system. I was using VHS, so I had to manually take the tape out and submit it as evidence. His was digital, and I have no idea what he did with it. (RR: Vol. 3, P. 53, L. 23-25, P. 54, L. 1-3)

The State's Attorney then calls his next Witness, Sargent Shannon Brazeal.

States Attorney had no question concerning the destroyed video.

Appellant's Attorney begins cross examination of Sargent Braziel.

Q. Okay. Back in 2011 did y'all use videotape or digital?

A. We had a mixture of both. We had one vehicle that ran - - still had the old system that had VHS tape. Everything else was **saved digitally to a card**.

Q. Okay. Do you know what happened to Officer Sowell's video?

A. We had a computer crash, unrecoverable. **We tried to recover** what we could not get that back that far. (RR: Vol. 3, P. 74, L. 13-22)

## VIII.  SUMMARY OF ARGUMENT

Under the U.S. Constitution, a criminal defendant will have a meaningful opportunity to present a complete defense. Consequentially, the destruction or failure to preserve exculpatory evidence is a violation of due process regardless of whether or not it is done in  bad faith.  The State never developed or proved that the  San Augustine Police Department even has a written Standard Policy to preserve a video. The totality of the circumstances in this case establish bad faith on behalf of the San Augustine Police Department to either destroy or fail to preserve the video, which could establish Appellant's right to self-defense. The Video/Audio  recording of the Alleged traffic stop, Detention and the Inventory Search contained exculpatory evidence and the failure to preserve it was done in bad faith, violating Appellant's due process right.

## IX.  ARGUMENT

Appellant's Attorney made an objection on the admissibility of the evidence:

The roadside detention was in violation of the Texas Transportation Code 544.010, Subparagraph ( c ); and it violated Article 1, Section 9 of the Texas Constitution. Therefore, that evidence trying to offer is inadmissible.  (RR Vol. 2, P. 32, L. 5-8)

Court: Objection overruled.

The Appellant argues that he stopped properly at the intersection of the alleged traffic violation. The Appellant stopped properly according to Section 544.010 subparagraph ( c ) of the Texas Transportation Code.

Exculpatory evidence includes material that goes to the heart of the defendant's guilt or innocence as well as that, which might well alter the jury's judgement of the credibility of a crucial protection witness. *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972) *Higgs*, 713 F.2d at 42.

The Due Process Clause of the Fourteenth Amendment is violated when a prosecutor fails to disclose evidence that is favorable to the accused which creates a probability sufficient to undermine confidence in the outcome of the proceedings. See, e.g., *Thomas V. State*, 841 S.W.2d 399, 404 (Tex. Crim. App. 1992).

The duty to disclose extends to evidence in the possession of any member of the "prosecution team". See , e.g. *Kyles V. Whitley*, 514 U. S. 419, 437, 115 S. Ct. 1555, 1567, 131 L. Ed. 2d 490 (1995). ("the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police").

The Appellant's Attorney received a letter via fax Dated July 31, 2014, four

days before the start of the trial.  The letter stated, In preparing the above cases for this trial it has come to my attention that there was a video made on the night of the stop. My office has never received this video and in following up with the police department have found out that the video was stored on a computer at the police department and the computer crashed and the video is no longer available.

**Trial testimony about the video**.

On August 4, 2014, during trial, the arresting Officer Sowell testified on prosecution direct examination.   No, sir.  I would have to review video. Then on cross examination it was developed that the arresting Officer Sowell had a video recording of the incident, starting from the following of Appellant's vehicle thru the alleged traffic violation, detection, impound and inventory search.  Then, seven more questions on cross examination, the arresting Officer's answers were, "I am unsure without my video.  I wish there was a video.  I would have to have the video.  Not with out the video, No, sir.  Then I can't without a video.  If I had a video, I could. With out a video I would not know."

During cross examination of Office Blackwell stated, he did not know what Officer Sowell did with the video.  He also stated on cross examination, Well, there generally would be a video from the Patrol unit car recording the entire scene,

documenting everything.

The Appellant who is employed by a defense Attorney in San Augustine, argues that the State and San Augustine Police Department acted in "Bad Faith". The prosecutor stated digital's don't get logged into evidence. It just gets downloaded onto the mainframe. Prosecutor stated, But, you know, things happen. Computers crash. I tried a case where the whole dadgum case file was lost by the police department. (RR: Vol. 3, P. 111, L. 5-13)

Appellant argues, if the state knows that computers crash and case files have been lost by the Police Department and video is documenting everything real time. Failure to preserve the video violated Appellant's due process and right to a fair trial.

A prosecutor has a duty not knowingly to proffer perjured testimony and to correct any perjury of which he may become aware during trial. See e.g., *Alcortav v. Texas,* 355 U. S. 28, 31, 78 S. Ct. 103, 105, 2L.Ed2d 9 (1957).

Evidence impeaching the testimony of a government witness is exculpatory when the credibility of the witness maybe determinative of a criminal defendant's guilt or innocence. *Giglio*, 405 U.S at 154, 92 S.Ct. at 766; *United States v. Gengler*, 574 F. 2d.730,735 (3d Cir.1978).

In prosecutor direct examination of Officer Blackwell the prosecutor handed

Officer Blackwell a copy of his own police report. The prosecutor states, Some of the pink, that's my highlighting; but other than that it's a good copy. (RR: Vol. 3, P. 10, L. 1-2). Q. At that time I think you testified that y'all began searching the vehicle first as an inventory search; is that correct?

A. Actually, before any of that, I just stood there in the open door of the vehicle and noticed the white streaks on the door panel.

Q: In Plain view?

A. Right, in plain view.

Officer Blackwell's police report show's that he knowingly and willfully, with deceitful malicious intent, along with the prosecution mislead the jury on the sequence and the order, by Officer Blackwell's testimony, he states he found the alleged evidence in the car door pocket, to justify the plain view doctrine.

**Officer Blackwell's Report**

Officer Sowell placed Pritchett in custody on the charge "Fail to present Driver License" and placed him in the rear seat of his patrol vehicle. Officer Blackwell's report states, I looked into the open door of the vehicle and inside the door pocket, I observed a small amount of white substance. I touched the small fragments and noted the substance was firm and waxy. I know this to be consistent with crack

cocaine. I retrieved a field test kit from my vehicle, and tested the fragments of the substance in the door pocket. The substance tested positive for cocaine. I advised Officer Sowell, and I advised Pritchett that he was going to be charged with Possession of a controlled substance in a drug free zone. I collected the remaining of the fragments of cocaine from the door pocket with officer Sowell watching, and placed them in an evidence bag, and immediate handed the bag to Officer Sowell. There was a number of fragments in the area of the door pocket. And I tested several **small white smears** on the door panel which gave positive indication of the presence of cocaine. It appeared that Pritchett was attempting to destroy the rock of crack cocaine to prevent it from being discovered by officers. I advised Pritchett of his Miranda warnings, and he told me that he wished to speak to an attorney.

The Appellant argues that the video/audio contains "Favorable evidence" includes both " exculpatory " and "impeachment evidence". _United States V. Bagley_, 473 U.S. at 676, 105 S. Ct. At 3380; _Thomas v. State_, 841 S.W. 2d at 403.  Officer Sowell's wilfulness, on eight questions on cross examination,  declined to answer the questions without seeing his video.   Officer Blackwell's testimony was in direct conflict with his own police report.

Moreover, the testimony from the arresting Officer Sowell and the back-up

Officer Blackwell was inconsistent with the police officers own report's of the alleged events which would have been impeached by the video. Appellant was significantly prejudiced by the absence of the video.

The San Augustine Police Department itself was in charge of maintaining and preserving the video and it was their failure to do so that denied Appellant a complete defense. Based on the totality of the circumstances outlined in the above portion, the failure of the San Augustine Police Department to preserve this video was done in bad faith and therefore, was a violation of Appellant's due process right.

Appellant has shown that the state through its agent the San Augustine Police Department, did act in bad faith and had a reason or motive not to preserve the exculpatory evidence in the video of the incident that would show the police officers misconduct and the truth of what actually took place during the following, alleged traffic violation and the detention of the Appellant. As Officer Blackwell testified about the video, "documenting everything real time". Further, Appellant has shown that the video contained exculpatory evidence that would have been very useful in the Appellant's right to self-defense, to the jury.

Appellant was denied his due process right to adequately present a defense and was constitutionally harmed.

## POINT OF ERROR 3.

**The trial court abused its discretion sustaining prosecution's objection to defense motion to read into the record the relevant section of the Transportation Code for the jury's understanding as it applies to motorists stopping at intersections.**

## VII. STATEMENT OF FACTS

The foregoing statements of the facts are incorporated herein by references for all purposes. Facts regarding Transportation Code 544.010 ( c ) evidence:

A trial to a jury commenced on August 4, 2014, during the course of defense counsel's cross examination of the police officer who conducted Appellant's detention, defense counsel for the Appellant motioned the court to allow defense counsel to read into the record from the "Texas Criminal and Traffic Law Manual" Transportation Code 544.010 ( c ) for purpose to advocate therefrom during cross examination that would have fairly informed the jury and the court the controlling law of the transportation code as it applies to motorist and the police officer who stopped the Appellant. Mr. Dudinsky: "One moment, Your Honor, I would like to read into the record the transportation code, if I may, if the prosecutor has no objection. Mr. Dutton: "I'm going to object to you reading <u>what you believe</u> to be the law. The judge can instruct the jury what the law is. The Court: "Let me see ---- are you proposing to read?" Mr. Dudinsky: " This here, Section 544.010 sub-paragraph c

governs a motorists stopping at stop signs and yield signs. And I think the jury would be entitled to hear what the procedure is that we have to follow." Mr. Dutton: "Your Honor, I object to the side-bar there." The Court: "Sustained" Mr. Dutton: "Thank you". The Court: "The Court's charge is going to contain all the instructions that the jury is going to hear. When we have a charge conference, we will take this up" Mr. Dudinsky: "All right. So I'm not allowed to read this to the jury?" The Court: "No. The Court's charge is going to contain all the instructions as far as the law is concerned." Mr. Dudinsky: "Okay." (RR: Vol. 2, P. 77-78).

Following summary closing arguments, a charge conference not transcribed initiated concerning the court's charge. The presiding judge agreed to include in the court's charge, Court: "if you have a reasonable doubt that the Defendant, Robert Eugene Pritchett, failed to properly stop at the Intersection of Hospital Street and Milam Streets, or if you believe the Defendant, Robert Eugene Pritchett, properly stopped at said intersection, then any evidence obtained from the search of Defendant Robert Eugene Pritchett's vehicle shall be disregarded as evidence against him." (RR: Vol. 3, P. 84, L. 20-25, P. 85 L. 1).

The court's charge did not include the wording of paragraph ( c ) of Transportation Code 544.010 on the letter of the law governing lawful motorist

stopping procedure at stop signs located at intersections.

## VIII.  SUMMARY OF ARGUMENT

It must be accounted that if the jury had been provided the verbatim context of paragraph ( c ) to review for consideration and deliberation on the officer's reason for stopping Appellant; the jury would have been informed concerning the letter of the law as it applies to the circumstances, particularly the officer's reason for stopping Appellant.  The jury would have concluded that the officer's basis for stopping Appellant and conducting a roadside detention was unlawful.

## IX.  ARGUMENT

Under established Texas law, Transportation Code 544.010 ( c ) is the controlling law that motorists must obey when approaching an intersection with a stop sign or a yield sign.

Transportation Code 544.010. Stop Signs and Yield Signs. "(a) Unless directed to proceed by a police officer or traffic-controlled signal, the operator of a vehicle or streetcar approaching an intersection with a stop sign shall stop as provided by subsection ( c ).  ( c ) An operator required to stop by this section shall stop before entering the crosswalk or the near side of the intersection.  In the absence of a crosswalk, the operator shall stop at a clearly marked stop line.  In the absence of a

stop line, the operator must stop at the place nearest the intersecting roadway where the operator has a view of approaching traffic on the intersecting roadway. **Leg.H.** Stats. 1995 74th leg. Sess. Ch. 165, effective September 1, 1995" Section ( c ) is the relevant section of the code that applies to the facts of this case.

The officer testified that Appellant was stopped for failure to stop at a designated point at a stop sign. The officer agreed that a stop line is the designated point to stop. The officer testified that a video that was lost could have shown appellant could have shown where Appellant stopped. The lost video is material evidence. The citation for failure to stop at a designated point at a stop sign is material evidence not lost. The intersection did not have a cross walk nor a stop line being the essential elements addressed in section ( c ) of the code that require and mandate under such circumstances the stopping procedure a motorist must comply with and follow.

As it were, the jury had no video but the jury had available a code of law the jury could have assessed and applied to the controlling facts and circumstances of the physical configuration of the intersection. The jury only had discursive uncertain testimony of the officer from which to make its assessment. The court erred in its discretion to disallow the jury hearing and assessing the written relevant portion of

section ( c ) of the code by which to wholly judge the facts as they pertain to an officer's reason for detention; facts that were and are inextricable and precisely controlled by a code of law.

## POINT OF ERROR 4.

**Appellant's Constitutional Rights were violated under the Fourth Amendment of the United States Constitution and Article I, Section 9 of the Texas Constitution when the reasonable alternatives that were available to impoundment were not implemented.**

## VII. STATEMENT OF FACTS

The foregoing statements of the facts are incorporated herein by references for all purposes. Appellant was stopped at a residential street located in the town of San Augustine, Texas in the evening of November 24, 2011. Appellant was initially stopped for improperly stopping "failure to stop at a designated stop sign". Appellant's detention revealed that Appellant did not have his driver's license on his person. Appellant was arrested without warrant for failure to display driver's license. The officer testified at trial on August 4, 2014 that he arrested Appellant without a warrant. (RR Vol. 2, P. 85, L. 24-25).

Following Appellant's arrest, Appellant's vehicle was impounded. Necessity of and available alternatives to impoundment were discussed during defense

counsel's cross examination of the arresting officer.

Q.  Okay.  You impounded the vehicle?

A.  Yes, sir.  (RR: Vol. 2, P. 87, L. 2-3)

Q.  Yes?  Okay.  Now does the San Augustine Police Department have a standardized policy governing impounding procedures?

A.  Yes, sir, I believe we do.

Q.  Did you bring it with you?

A. No, sir, I do not have it with me.

Q.  So, your telling the jury that there is one?

A.  There should be, yes, sir.

Q.  You say there should be?  (RR: Vol. 2, P. 87, L. 1-2, 17-25).

A.  I'm not sure.  I don't have the policy manual in front of us.  (RR: Vol. 2, P. 88, L. 1)

Q.  Now, There were alternatives available to you that you could have avoided impoundment, were there not?

A.  Are you referring to when you approached the scene?

(RR: Vol 2, P. 95, P. 1-5)

Q.  I was at the location; you recall?

A. Yes, sir.

Q. The care was not turned over to me, and you knew I was the owner?

A. Yes, sir.

Q. So you go ahead and impound the vehicle and you conduct an inventory search?

A. Yes, sir.  (RR: Vol. 2, P. 95, L. 5-12).

## VIII.  SUMMARY OF ARGUMENT

The Appellant's Attorney, made an objection that The impound was improper. Being an improper impound and improper search, then it falls under 38.23 (a) of the Texas Code of Criminal Procedure and must be excluded.

The evidence in the trial record shows the availability of the owner of the vehicle being at the scene of the arrest to whom the officer could have given possession of the vehicle.

The evidence in the record shows the vehicle was legally parked at the curb of a residential street two blocks from Appellant's home.  The evidence in the record shows the car was not abandoned nor impeding the flow of traffic or was a danger to public safety.  The evidence also shows that the vehicle was not mechanically defective or immobilized.  The evidence in the record shows that there was no connection between the arrest or that the vehicle was used in the commission of a

crime. The record shows the police officer chose to impound Appellant's vehicle based upon a class "C" misdemeanor offense of failure to display driver's license. There was no evidence in the record showing that the area in which Appellant's vehicle was parked was especially vulnerable to crime against motor vehicles. The evidence in the record shows that Appellant did not consent to nor ask the police officer to impound and tow the Appellant's vehicle. In light of the undeniable alternatives available, condition of the vehicle, location of the vehicle, the police officer chose to impound and act in bad faith and disregard and violate the constitutional rights proclaimed for all in the Fourth Amendment of the Constitution of the United States and the given rights of all protected in Article 1, Section 9 of the Texas Constitution.

## IX. ARGUMENT

The Appellant's Attorney, made an objection that The impound was improper. Being an improper impound and improper search, then it falls under 38.23 (a) of the Texas Code of Criminal Procedure and must be excluded.

The available alternatives to impoundment established at trial was evidence showing that the arresting police officer had no credible necessity existing to justify a lawful impoundment of Appellant's motor vehicle.

The State bears the burden of proving that an impound in lawful, and may satisfy this burden by demonstrating that (1) the driver was arrested, (2) no alternatives other than impoundment were available to ensure the vehicle's protection, (3) the impounding agency had an inventory policy, and (4) the policy was followed. *Garza v. State,* 137 S.W.3d 878, 882 (Tex. App-Houston [1st Dist.] 2004, pet. Ref'd). The owner of the vehicle was on site. The State did not prove that the San Augustine police department had an impound or inventory policy and if the policy's were followed.

The Court squarely confronted issues of vehicle inventory searches and impounded in *South Dakota v. Opperman,* 428 U.S. 364, 96 S Ct. 3092, 49 L.Ed.2d 1000 (1976). "The necessary predicate for any such search, however, is that the automobile be lawfully impounded, that is to say, taken lawfully into official custody." *Id.,* at 375, 376, 96 S.Ct. At 3100, 3100-01; the automobile has been subject to less stringent warrant requirements for searches and seizures than other "effects" protected under the Fourth Amendment. The reasons for this are two fold. First, the inherent mobility of an automobile creates circumstances of such exigency that as a matter of practical necessity strict enforcement of the warrant requested is impossible. Second, there is a lesser expectation of privacy with respect to an

automobile. *South Dakota v. Opperman,* supra.

However, automobiles are considered "effects" and within the scope of the Fourth Amendment, See: *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); see also: *Coolidge v. New Hampshire,* 403 U.S. 443, 461, 91 S CT. 2022, 2035, 29 L.Ed.2d 564 (1971); "The word "automobile" is not a talisman in whose presence the Forth Amendment fades away and disappears." *Id.* In order for an impoundment of an automobile to be lawful the seizure of the automobile must be reasonable under the Fourth Amendment.

Reasonable cause for impoundment may arise from: (1) an unattended vehicle that is illegally parked or otherwise an impediment to traffic, *Collins v. State* 630 S. W.2d 890 (Tex. App. 1982- pet. ref'd). Evidence at trial established that Appellant's vehicle was not unattended or illegally parked or impeding the flow of traffic on a residential road. (RR Vol. 2, P. 93). (2) an unattended vehicle that the driver cannot remove because he is injured or physically or mentally incapacitated, *Sandel v. State,* 253 S.W2d 283 ( Tex. Cr. App. 052); *Broughton v. State,* 643 S.W. 2d 147 (Tex. App. 1982 .no pet). There was no evidence that the Appellant was unable to remove his vehicle because of his being injured or that he was physically or mentally incapacitated. (3) a vehicle that has been stolen or used in the commission of another

crime. *Gauldin v. State,* 649 S.W.2d 411 (Tex. Cr. App. 1984); *Pearson v. State,* 649 S.W.2d 786 (Tex. Cr. App. 1983, pet. ref'd), Evidence at trial established that Appellant's vehicle was not stolen or connected with nor used in the commission of another crime. (RR Vol. 2, P. 99). (4) a vehicle the becomes unattended because the driver is removed form the vehicle, placed under arrest, and his property cannot be protected by any means other than impoundment. *Evers v. State,* 576 S.W.2d 46 (Tex. Cr. App. 1978)

Evidence at trial established that the owner was at the scene at the time of appellant's arrest and the owner was available to safeguard owner's vehicle. Yet, the arresting officer who knew the owner was an attorney, knew the owner was the owner of the vehicle, and knew that the owner's vehicle was in compliance with insurance and registration requirements however, would not allow the owner possession of the vehicle. (RR Vol. 2, P. 95-95)

An automobile may be impounded if the driver is removed from his automobile and place under custodial arrest and no other alternatives are available other than impoundment to insure the protection of the vehicle. *Bevavides v. State,* 600 S.W.2d 809 (Tex. Cr. App. 1980); *Christian v. State,* 592 S.W.2d 359 (Tex. Cr. App. 1980); *Daniels v. State,* 600 S.W.2d 809 (Tex. Cr. App. 1980).

We note that police officers need not independently investigate possible alternatives to impoundment absent objectively demonstrable evidence that alternatives do in face, exist. *Jonathan Eugene Redmond v. State,* (No. 05-09-01461-CR) (Tex. App.- Dallas 2011); see also *Mayberry v. State,* 830 S. W.2d 176, 180 (Tex. App. - Dallas 1992, pet ref'd).

When impoundment follows custodial arrest, appellant courts have considered several factors in determining the reasonableness of the impoundment. (1) the availability of someone at the scene of the arrest to whom the police could have given possession of the vehicle, (2) whether the vehicle was impeding the flow of traffic or was a danger to public safety, (3) whether the vehicle was locked, (4) whether the detention of the arrestee would likely be of such duration to require the police to take protective measures, (5) whether there was some reasonable connection between the arrest and the vehicle, and (6) whether the vehicle was used in the commission of a crime. *Id.* At 179-80. Objective evidence was established in court showing there were reasonable alternatives to impoundment that did in fact exist and were available.

The arresting officer did not assert any community care-taking justification for the impoundment, and in light of the officer's testimony at trial no such justification existed. The prosecution nor the testifying officer made no showing that Appellant's

car was connected with a crime, blocked a drive way or crosswalk, or was abandoned, stolen, and immobilized, or posed a hazard or impediment to other traffic. It is also significant that Appellant's car was legally parked in a residential area two blocks from Appellant's residence. Also significant, the officer testified the registered owner of the vehicle was available at the scene. The officer testified that he impounded the car after he made the arrest. (RR: Vol. 2, P. 94, L. 21)

The evidence for review affirmatively shows there were reasonable and lawful alternatives available to avoid impoundment. Respectfully, it cannot be concluded that the error was harmless beyond a reasonable doubt in its effect upon the jury. Tex.R.APP.P.Ann 81(b)(2).(Pamp.1989) *Gauldin v. State,* 683 S.W.2d at 415; *Fenton v. State,* 785 S.W.2d 443 (Tex. App.- Austin 1990)

## POINT OF ERROR 5.

**The inventory search of Appellant's vehicle was an illegal unconstitutional investigative search for evidence in violation of Article 1, Section 9 of the Texas Constitution.**

### VII.  STATEMENT OF FACTS

The forgoing statements of the facts are incorporated herein by references for all purposes.

Appellant was followed for over a half mile on a hunch because Appellant was observed by a police officer while driving on a road where allegedly a known drug place was located. (RR: Vol. 2, P. 48)

Appellant was stopped on a residential street located in the town of San Augustine, Texas in the evening of November 24 2011. Appellant was initially stopped for "failure to stop at a designated point at a stop sign" located 45 feet from the nearest place to the intersecting roadway. (RR: Vol. 2, P. 73-79)

Appellant's detention revealed that Appellant did not have his drivers license on his person. Appellant was arrested without warrant for failure to display drivers license. The police testified at trial on August 4, 2014 that he arrested Appellant without a warrant. (RR: Vol. 2, P. 85, L. 24-25)

Following Appellant's arrest, the Appellant's vehicle was impounded and inventoried. The record shows that there were reasonable alternatives available to impoundment and inventory. (RR: Vol. 2, P. 85-88, 91-95)

Following impoundment, an inventory search was conducted resulting in a trace net weight of less than 0.01 hundredths of a gram of cocaine found at night allegedly in plain view by a second police officer who was not conducting the inventory search but was searching for evidence.

Counsel questioned the arresting officer about inventory list.

Q. The car was not turned over to me, and you knew I was the owner?

A. Yes, sir.

Q. So you go ahead and impound the vehicle, and you conduct an inventory search?

A. Yes, sir.

Q. Did - - now, the standard criteria for inventory is an inventory list. Does that make sense?

A. Yes, sir, anything of value in the vehicle.

Q. And you took an inventory list?

A. Yes.

Q. You did?

A. There should be one, yes, sir. I don't see it with this report.

Q. I beg your pardon? (RR" Vol. 2, P. 95, L. 10-25)

A. I don't see one with this - - report.

Q. You listed the valuables that you inventoried?

A. I - - I should have, but I can't tell you with this report.

Q. But we don't have it right?

A. Right. I understand. Your correct on that. ( RR: Vol. 2, P.96, L. 1-5)

Q. And I'm suggesting to you that you conducted an inventory, an inventory that was a ruse to make a search without a warrant of a motorist vehicle. You were searching for criminal evidence, and you knew you did not have the probable cause, didn't you, otherwise?

A. I didn't have probable cause for an evidentiary search, no.

A. No, sir. I was conducting an inventory search when officer Blackwell came up.

Q. Okay. So then officer Blackwell was making a search on his own, wasn't he? If he wasn't part of the inventory search, he must have been searching - -

A. I don't know what officer Blackwell does. You would have to ask him. (RR: Vol. 2 P. 96-97)

## VIII. SUMMARY OF ARGUMENT

The evidence in the record shows that the owner of the vehicle was available at the scene to take possession of the vehicle. The arresting officer testified that he arrested Appellant without a warrant, impounded the vehicle, and conducted an inventory of the vehicle. The arresting officer testified that a second officer was not part of the inventory search but was searching for evidence allegedly discovered at night in plain view. The alleged plain view evidence consisted of a trace-net weight less than 0.01 hundredths of a gram of cocaine.

The arresting officer chose to impound which allowed opportunity to conduct a specious inventory search for investigative purpose that otherwise the arresting officer lacking the probable cause required under the automobile exception to the warrant requirement did not have nor could not have established based on the totality of the circumstances of the arresting officer's initial reason for following Appellant, aRR:est for misdemeanor offence, and the circumstances of the scene of detention, none of which, provided the arresting officer with legal probable cause to search Appellant's vehicle.

The inventory search of Appellant's vehicle was an unconstitutional investigative search that was conducted in violation of Article 1, Section 9 of the Texas Constitution.

## IX.  ARGUMENT

The Appellant's Attorney,  made an objection that The impound was improper. Being an improper impound and improper search, then it falls under 38.23 (a) of the Texas Code of Criminal Procedure and must be excluded.

To rebut the presumption of proper police conduct, a defendant must show the search was conducted without a warrant and once the defendant rebuts the presumption the burden shifts to the State to either produce evidence of a warrant or

prove the reasonableness of the search.

*Russell v. State,* 717 S.W.2d 7, 9 (Tex.Cr.App. 1986); *Telshow v. State,* 964 S.W. 2d 303, 307 (Tex.App. - Houston [14th Dist.] 1998, no pet.); *White v. State,* 871 S.W.2d 833, 836-37 (Tex.App.-Houston [14th Dist.] 1994, no pet.) See Highwarden v. State, 846 S.W.2d 479,481 & n. 2 (Tex. App.-Houston [14th Dist.] 1993), pet. dism'd as improvidently granted, 871 S.W.2d 726 (Tex.Crim. App. 1994). The arresting officer testified that he arrested Appellant without a warrant and did not have probable cause to search Appellant's vehicle (RR: Vol. 2, P. 85)

A unanimous ruling stated that a vehicle stop is a seizure of not only the vehicle but of its occupants. *Brendlin v.California,* 551 U. S. 249, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). A person is seized for constitutional purposes, when under all of the circumstances, a reasonable person would believe that he is not free to leave. *Nottingham v. State,* 908 S. W.2d 585 (Tex.App. - Austin 1995). A person is seized *i.e.,* arrested, only when he has been restrained by means of physical force or when he has submitted to a show of authority. *California v. Hodari,* 499 U.S. 621, 111 S.Ct 1547, 113 L.Ed.2d 690 (1991); *Medford v. State,* 13 S.W.2d 769 (Tex.Cr. App. 2000). In order to challenge a search, the defendant has the burden to prove he has standing that he has a legitimate expectation of privacy, in the premises or thing

searched or seized. *Granados v. State,* 85 S.W.3d 217 (Tex.Cr.App. 2002) The Appellant had a reasonable expectation of privacy in the vehicle and standing to object to a search of the vehicle because Appellant had exclusive control of and received permission from the owner to use the vehicle.

Following Appellant's arrest without warrant for the misdemeanor offense of failure to display driver's license, appellant was handcuffed and confined to the back seat of the arresting officers control unit. (RR: Vol. 2, P. 86)

When a policeman has made a lawful custodial arrest of the occupant of an automobile, he may as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. *New York v. Belton,* 452 U. S. 454, 101 S.Ct 2860, 69 L.Ed. 2d 728 (1981). The *Belton* holding was laid to rest in *Arizona v. Grant,* 556 U. S. 332, 129 S.Ct. 1710, L.Ed.2d 485, 47 A.L.R. Fed.2d 657 (2009). In place of *Belton*, the court adopted a two-pronged approach: "Police may search a vehicle incident to arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe that the vehicle contains evidence of the arrest." *Gant* at 1723. Appellant was confined in the backseat of the arresting officer's patrol unit and unable to reach the passenger seat of his vehicle and there was no reasonable grounds to suspect that evidence of failure

to display drivers license would be found in the passenger compartment of the vehicle. The arresting officer testified that he had no probable cause justification to search Appellant's vehicle. (RR: Vol. 2, p. 89)

"An inventory search need not be predicated upon the same requirements for probable cause or in obtaining a search warrant. Its existence rests upon the caretaking responsibility a police officer has toward a lawfully impounded automobile." *Gill v. State,* 625 S. W.2d 307, 319 (Tex.Cr.App. 1980)

The state will contend that the warrantless search was permissible as an inventory search under *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct 3092, 49 L.Ed.2d 1000 (1976). The burden of proof in that regards rests upon the state. *Delgado v. State,* 718 S.W.2d 718, 721 (Tex.Cr.App. 1986)

An inventory search is to ascertain the contents of a properly impounded automobile, where a necessity exists (1) to protect the defendant's property while it is in police custody, (2) to protect the authorities against claims of lost or stolen property, or (3) to protect the police from potential danger. The necessary predicate for an inventory search is that the automobile be lawfully impounded, that is to say, taken lawfully into official custody, *Opperman,* Supra. An automobile may be impounded if the driver is removed from his automobile and placed under custodial

arrest and no other alternatives are available other than to insure the protection of the vehicle. *Evers v.State,* 576 S. W.2d 46 (Tex.Cr.App 1978); *Christian v. State,* 592 S.W.2d 359 (Tex.Cr.App. 1980). Alternatives were available to insure the protection of the vehicle. The owner of Appellant's vehicle was personally at the scene of detention and available to insure the protection of owner's vehicle as an alternative to impoundment and inventory. (RR: Vol. 2, P. 116) The vehicle could have been safely protected by the owner of the vehicle. *Evers,* Supra.

An inventory search on a traffic arrest is illegal if the vehicle is parked lawfully at the time and no need to take the vehicle into custody *Fenton v. State,* 785 S.W.2d 443 (Tex.App. - Austin 1990, no pet.). The vehicle was legally parked at a curb on a residential street located two blocks from Appellant's home. (RR: Vol. 2, P. 91) Impoundment and inventory search is legal only if there is no alternative to impoundment. *Backer v. State,* 656 S.W.2d 463 (Tex.Cr.App. 1983). Owner of the vehicle at the scene to take custody of the vehicle was a reasonable alternative to impoundment and inventory. (RR: Vol. 2, P. 106-107)

In a leading Texas case, *Benevidas v. State,* 600 S.W.2d 809 (Tex.Cr.App. 1980) the Court of Criminal Appeals indicated impoundment and inventory would be permissible in the following situations: **"(1) To remove a vehicle from an**

**accident scene."** Appellant's vehicle was not involved in an accident. (RR: Vol. 2, P. 106)

**"(2) To remove a vehicle parked in violation of regulations."** Appellant's vehicle was not blocking a drive way, nor parked in a no-parking zone, and was legally parked at a curb on a residential street. (RR: Vol. 2, P. 107) **"(3) The owner or driver requested or consents."** Neither Appellant nor owner requested impoundment or consented impoundment. (RR: Vol 2, P. 93) **"(4) Officer reasonably believes vehicle is stolen."** Officer did not believe the vehicle was stolen. (RR: Vol. 2, P. 94) **"(5) The vehicle is abandoned."** Appellant's vehicle had not been abandoned. (RR: Vol. 2, P. 92)

**"(6) The vehicle is a hazard."** Appellant's vehicle was not a hazard impeding traffic. **"(7) The vehicle is so mechanically defective that it creates a danger to others using the highway."** Appellant's vehicle was not mechanically defective nor immobilized. (RR: Vol. 2, P. 99) **"(8) A statute authorizes impoundment."** No applicable statute authorizing impoundment. **"(9) The driver is arrested for being intoxicated while in the vehicle and no other person is available to drive the vehicle or otherwise safeguard the vehicle."** Appellant was arrested for failure to display driver's license, the owner was available at the scene to drive and safeguard

the vehicle. (RR: Vol. 2, P. 95-96)  **"(10) The driver is removed from his automobile and placed under arrest and no other alternatives are available other than impoundment to insure protection of the vehicle."**  Owner available to take possession and remove vehicle.  Appellant's wife located two blocks from vehicle and available to take possession and remove vehicle.  (RR: Vol. 2, P. 94) *Benevidas,* Supra.

Impoundment of an automobile may be lawful in a variety of circumstances. *Mayhood v. State,* 669 S. W.2d 873, 874 (Tex. App. 1984, pet ref'd).  Reasonable causes for impoundment may arise from: (1) an unattended vehicle that is illegally parked or otherwise an impediment to traffic, *Collins v. State,* 630 S. W.2d 890 (Tex. Cr. App. 1982, pet ref'd); (2) an unattended vehicle that the driver cannot remove because he is injured or physically or mentally incapacitated, *Sandel v. State,* 253 S. W.2d 283 (Tex. Cr. App. 1952); *Broughton v. State,* 643 S. W.2d 147 (Tex. App. 1982, no pet.)  (3) a vehicle has been stolen or used in the commission of another crime, *Gauldin v. State,* 683 S.W.2d 411 (Tex. Cr. App. 1984); *Pearson v. State,* 649 S.W.2d 786 (Tex. App. 1983, pet ref'd); or (4) a vehicle becomes unattended because the driver is removed from the vehicle, placed under arrest, and his property cannot be protected by any means other than impoundment, *Evers v. State,* 576 S. W.2d 46

(Tex. Cr. App. 1978). The arresting officer stated that impoundment and inventory was solely based upon Appellant's arrest. (RR: Vol. 2, P. 94)

The arresting officer conducted the inventory of Appellant's vehicle. The burden is on the State to show a lawful inventory. *State v. Giles,* 867 S.W.2d 105, 108 (Tex. App. - El Paso, pet. ref'd). As in *Giles* and this case, the State did not provide the trial court with a written inventory Policy.

Appellant's vehicle should not have been impounded in the first place. The State did not offer any reason for impoundment other than Appellant's arrest that had no connection with the vehicle. The available alternatives were affirmed in court. The testimony in court showed that the officer's inventory search did not include a written inventory list nor did the State provide the court with a written inventory policy. An inventory search is permissible under the federal and state constitutions if conducted pursuant to a lawful impoundment.

The court of criminal appeals stated that "before and inventory search can be upheld as lawful there must be an inquiry into the lawfulness of the impoundment." *Benevides,* Supra.

The impound was a violation of Appellant's rights under Article 1, Section 9 of the Texas Constitution.

# X. CONCLUSION

The issues addressed in Appellant's appeal are fundamental to the ingrained judicial principals characteristic of sovereign nation. Appellant initially argued that his subpoena was prohibited by an insupportable technicality foreclosing receipt of evidence that could be of an importance to a legal defense. Authorities acting in behalf of the State concluded evidence unavailable or lost should have no judicial weight within a legal matter concerning the innocence beyond guilt. Appellant was subdued by a judicial system from imparting to a jury an instructive guidance inherent within a code of law for its understanding. Freedom from being subjected to unreasonable seizure and search was subordinated to a callous disregard for the people's rights.

Appellant respectfully submits that he has shown that due process may be what is only due. Appellant's right to be secure under Article 1, Section 9 of the Texas Constitution was of no moment when Appellant's vehicle was impounded and searched even though alternatives to impound were readily available to police officers acting in disrespect to their oath to the State. The arresting officer who arrested Appellant for failure to display drivers license impounded and inventoried Appellant's vehicle. A second police officer arrived and commenced searching

Appellant's vehicle not for valuables nor evidence to display drivers license but searching for evidence of another crime - - any crime. The second officer without developed probable cause to search Appellant's vehicle suspiciously found a trace amount less than 0.01 hundredth of a gram of cocaine. The exclusionary rule is warranted.

Appellant entrusts the Honorable Court to exclude the unlawfully obtained evidence and enter a dismissal or accord a remand of this case for a new trial.

## XI.  PRAYER FOR RELIEF

WHEREFORE ABOVE PREMISES CONSIDERED, Appellant prays that Honorable Court reverse the judgement of the trial court and render judgement in favor of Appellant, or in the alternative, Appellant respectfully request that the Honorable Twelfth Court of Appeals remand this case back to the 273rd District Court of San Augustine County, Texas for a new trial.

Respectfully submitted,

LAW OFFICE OF DONOVAN PAUL DUDINSKY
701 South Liberty Street
San Augustine, Texas 75972
Phone:      936-275-9871
Fax:          936-275-9655
E-Mail:     dpauldudinsky@yahoo.com

## XII.  CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Appellant's Brief was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure (Appealed) on this 12th day of January, 2015.

/s/donovan paul dudinsky
_____
Donovan Paul Dudinsky

# XIII.   CERTIFICATE OF COMPLIANCE

I certify that this document contains 11,116 words (counting all parts of the font.  I certify that this document was prepared with Word Perfect X6, and according to the programs word-count function, the sections covered by TRAP 9.4(i)(1) contains 11,116 words.

/s/ donovan paul dudinsky

_____

Donovan Paul Dudinsky

# XIV.  APPENDIX

APPENDIX "A"    Motion to Suppress (Evidence Obtained From Illegal Detention and Illegal Impoundment and Inventory).

APPENDIX "B"    Judgement of Conviction by Court

APPENDIX "C"    Trial Court's Certification of Defendant's Right of Appeal

APPENDIX "D"    Defendant's Written Notice of Appeal

APPENDIX "E"    Defense Exhibits 2, 3, and 4 Photographs of Intersection of Alleged Traffic Violation

APPENDIX "A"



IN THE 273RD JUDICIAL DISTRICT COURT OF
SAN AUGUSTINE COUNTY, TEXAS
STATE OF TEXAS

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| VS. | § | Cause No. CR-13-8411 |
| | | Cause No. CR-11-8412 |
| ROBERT EUGENE PRITCHETT | § | |

## MOTION TO SUPPRESS
### (Evidence Obtained From Illegal Detention and Illegal Impoundment and Inventory)

TO THE HONORABLE JUDGE OF SAID COURT:

Now Comes Defendant, Robert Eugene Pritchett respectfully moving the Honorable Court to suppress and exclude illegally obtained evidence pursuant to an unlawful detention and illegal impoundment and inventory search of Defendant's vehicle in violation of the Fourth Amendment of the United States Constitution and Article 1, Section 9 of the Constitution of the State of Texas, and Article 38.23 of the Texas Code of Criminal Procedure.

### Statement of Facts

In the early evening of Thanksgiving November 24, 2011, Defendant's vehicle was observed on a public roadway by a passing police officer. The police officer began pursuit and followed Defendant's vehicle for half-mile. The police officer stopped the Defendant two blocks from Defendant's residence for fail to stop at a designated point at stop sign. Upon his approach to Defendant's vehicle, police officer who knew Defendant, knew his place of residence, knew that Defendant's place of employment was a local law firm, asked Defendant for Defendant's driver's license that Defendant did not have on his person at the time, then asked Defendant for consent to search Defendant's vehicle. Defendant not consenting to search, was asked to exit his vehicle,

Page 1.



at which time, police officer then asked Defendant to open his mouth into which police officer shined a flashlight. A second police officer showed up and approached Defendant for purpose of detecting some suspicious odor and detecting none told the first police officer to arrest Defendant for not having his driver's license on his person. Defendant's hands were handcuffed behind his back. Defendant then being secured was placed inside first police officer's patrol car.

Defendant's employer (lawyer) and owner of Defendant's vehicle that Defendant drove for business and personal use pursuant owner's permission, nevertheless, owner of vehicle arrived at the scene of detention. The police officers nevertheless seized, impounded, and conducted an inventory of said vehicle, during which claiming discovery of a trace or a smear of cocaine in the inside of the door pocket/panel of open driver's side door.

<u>**Argument and Authorities**</u>

I.

Roadside detention of Defendant's motor vehicle was in violation of Transportation Code section 544.010 that governs operator stopping procedure when approaching Stop Signs and Yield Signs, to wit: (a) "unless directed to proceed by a police officer or traffic-control signal, the operator of a vehicle or streetcar approaching an intersection with a stop sign shall stop as provided by Subsection ( c )". ( c ) " An operator required to stop by this section shall stop before entering the crosswalk on the near side of the intersection. In the absence of a cross-walk, the operator shall stop at a clearly marked stop line. In the absence of a stop line, the operator shall stop at the place nearest the intersecting roadway where the operator has a view of approaching traffic on the intersecting roadway".

The officer who conducted the roadside detention, impoundment and inventory search of Defendant's vehicle issued a warning citation on the basis that Defendant **Failed to Stop at a Designated Point at Stop Sign**. Defendant was subsequently arrested and issued citation for **Fail to Display DL**. However, The erroneous <u>day/date/time of Contact</u> appearing at the top of citation regarding warning for failed to stop at a designated point at stop sign and arrest/ citation for failure to display driver's license is dated: **11/25/2011 3:22 AM..** Showing not that the encounter had though factually taken place in the early evening of November 24, 2011, but shows the encounter took place on the following morning of November 25, 2011 @ 3:22 a.m.

The Defendant's vehicle was observed by a police officer being on a public roadway. The police officer had not observed a crime having been committed nor did said officer observe a crime in progress. The police officer pursued and follow Defendant's vehicle for one-half mile. A hunch, suspicion, or good faith perception is not enough alone to satisfy the probable cause burden. <u>Stull v. State</u>, 772 S.W.2d 449 (Tex.Cr.App. 1989). The events perceived by the police officer must be out of the ordinary, suspicious and tie a suspect with a criminal act. <u>Stull</u>

The Defendant was pulled over and subjected to roadside detention. A person is seized for constitutional purposes, when under all of the circumstances, a reasonable person would believe that he is not free to leave. <u>Nottingham v. State</u>, 908 S.W.2d 585 (Tex.App.– Austin 1995).

Incident to the initial roadside detention, the Defendant was arrested without warrant for not having his drivers license on his person, handcuffed, and Defendant was placed inside a patrol car. An arrest occurs when a person's liberty or movement is restricted or restrained. <u>Amores v. State</u>, 816 S.W. 2d 417 (Tex.Cr.App. 1991). The police searched Defendant's vehicle incident to Defendant's arrest. In <u>Arizona v. Gant</u>, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed. 2d 485, A.L.R.

Fed. 2d 657 (2009) the Court adopted a two-pronged approach: "Police may search a vehicle incident to arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it reasonable to believe that the vehicle contains evidence of the offense of arrest." Defendant was secured in patrol car and therein was unable to reach the passenger compartment of his vehicle, and the vehicle did not contain evidence of the crime of not having his drivers license. "The Defendant was arrested for having a suspended license; there were no reasonable grounds, reasonable suspicion, or probable cause to suspect that evidence of license suspension would be found in the vehicle." Gant .

Following the placement of Defendant in the patrol car, the police officers impounded Defendant's vehicle and conducted an inventory search of Defendant's vehicle at the scene of detention. Impoundment and inventory search legal only if no alternative to impoundment. Backer v. State, 656 S.W.2d 463 (Tex.Crim.App. 1983). Inventory search on traffic arrest is illegal if vehicle parked lawfully at time and no need to take it into custody. Fenton v. State, 785 S.W.2d 443 (Tex. App.– Austin 1990, no pet.)

Defendant's vehicle was lawfully parked on a residential roadway near its roadside curb. Defendant' s vehicle was not parked in a no parking zone. Defendant's lawfully parked vehicle did not impede traffic. Defendant's vehicle had not been abandoned or immobilized. Defendant's vehicle was lawfully parked two blocks away from Defendant's residence where Defendant's wife resided and was available to take possession of and safeguard Defendant's vehicle. Defendant's arrest for traffic violation would have required Defendant to be transported to jail and following procedure would have been in a short time (was released on personal recognizance) released and could have returned to the vehicle to take possession of and

safeguard vehicle. Defendant's vehicle was not stolen. Defendant's lawyer, employer, and owner of vehicle who gave Defendant permission to drive vehicle for business and personal use was available at the scene and time of detention to take possession of vehicle. Defendant's vehicle was not seized as evidence being connected to a crime. There was no reasonable connection between the arrest and the vehicle.

An automobile may be impounded if the driver is removed from his automobile and placed under custodial arrest and no other alternatives are available to insure the protection of the vehicle. Evers v. State, 576 S.W.2d 46 (Tex.Cr.App.1978).

"The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." Coolidge v. New Hampshire, 403 U.S. 443, 461, 91 S.Ct. 2022, 2035, 29 L.Ed. 564 (1971). Because judicially sanctioned inventory search of automobile is dilution of Fourth Amendment right to be secure against unreasonable searches and seizures, impoundment and search must be carefully examined and narrowly confined in each case. Rodriquez v. State, 641 S.W.2d 955 (Tex. App.– Amarillo 1982). Impoundment improper . . .no showing car illegally parked. Rodriguez.

In the leading Texas case, Benavides v. State, 600 S.W. 2d 809 (Tex.Crim.App. 1980) the court of Criminal Appeals indicated impoundment would be likely be permissible in the following situations:

1. **To remove a vehicle from an accident scene.** Defendant's vehicle was not involved in an accident.
2. **To remove a vehicle parked in violation of regulations.** Defendant's vehicle was not parked in violation of regulations.
3. **The owner or driver requested or consents.** Neither owner or driver requested or consented.
4. **Officer reasonably believes vehicle is stolen.** Vehicle not stolen.

5. **The vehicle is abandoned.** The vehicle was not abandoned.

6. **The vehicle is a hazard.** The vehicle was not a hazard impeding traffic flow.

7. **The vehicle is so mechanically defective that it creates a danger to others using the highway.** The vehicle was not mechanically defective.

8. **A statute authorizes impoundment.** No applicable statute authorizing impoundment.

9. **The driver is arrested for being intoxicated while in the vehicle and no other person is available to drive the vehicle or otherwise safeguard it.** The driver was not arrested for being intoxicated, and other persons were available to drive the vehicle and safeguard the vehicle.

10. **"If the driver is removed from his automobile and placed under arrest and no other alternatives are available other than impoundment to insure the protection of the vehicle."** Other alternatives were available other than impoundment to insure the protection of the vehicle. Benavidas

**WHEREFORE,** said Defendant prays that hearing be had hereon and that upon hearing hereof that this Court judicially find and determine that said detention and seizure was without warrant and impoundment unreasonable in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States and Article 1, Section 9 of the Constitution of Texas, that the substance seized and taken from said vehicle of the Defendant at said time be suppressed and excluded from evidence in this case pursuant to Section 38.23 (a) of the Texas Code of Criminal Procedure and the State of Texas and its agents prosecuting this case be ordered to refrain from offering in evidence or producing in the presence of the jury on the trial of this case and substance claimed by the State to be trace/smear cocaine and from asking any question of either of said police officers as to the presence of said substance in said vehicle at said time and place.

_Donovan Paul Dudinsky_
Donovan Paul Dudinsky
Counsel for Defendant

SWORN TO AND SUBSCRIBED BEFORE ME by Donovan Paul Dudinsky on ~~July 31~~ August 4, 2014, who being one and same acknowledged by his signature in my presence to which signature have placed my hand and seal of office.

_Janice K. Miller_
Notary Public, State of Texas
San Augustine County, Texas
My Commission Expires: 10-22-17

JANICE K. MILLER
Notary Public, State of Texas
My Commission Expires
October 22, 2017

Page 6

## ORDER

The above Motion to Suppress Evidence Obtained From Illegal Detention and Illegal Impoundment and Inventory was duly filed, presented, and heard at the time and manner required by law and the Court having duly considered same, finds that said Motion should be and is hereby Granted_____, Denied_____, to which ruling Defense duly excepts and respectfully requests hereby that the Court file its written findings of fact and conclusions of law.

_____
PRESIDING JUDGE
1st and 273rd Judicial Districts

APPENDIX "B"

IN THE DISTRICT COURT OF SAN AUGUSTINE COUNTY

STATE OF TEXAS

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| VS. | § | CAUSE NO. CR-13-8411 |
| ROBERT EUGENE PRITCHETT | § | |

Incident No./TRN: 915386994X
State ID No.: 04876899

**FILED**
AT ~~1:30~~ O'CLOCK P. M
9-11 20 14
JEAN STEPTOE District Clerk
SAN AUGUSTINE, TEXAS
BY _____

## JUDGMENT OF CONVICTION BY COURT; COMMUNITY SUPERVISION

Judge Presiding: Charles R. Mitchell                    Date of Judgment: September 10, 2014

Attorney for
the State: J. Kevin Dutton

Attorney for
Defendant: Donovan Dudinsky

Offense convicted of: Possession of Controlled Substance Drug Free Zone §481.115, 481.134 HSC

Degree: Third                                          Date of Offense: November 24, 2011

Applicable punishment range (including enhancements, if any): 2 years to 10 years TDCJID

Charging Instrument: Indictment     Plea: Not Guilty     Jury Verdict: Guilty

Terms of Plea     Five (5) years confinement in the Texas Department of Criminal Justice Institutional Division
Bargain:          probated for five (5) years; a fine in the amount of $3000.00
                  not probated; restitution as stated below.

Verdict for Offense: Guilty

| Plea to Enhancement Paragraph(s): N/A | Finding on Enhancement: N/A | Finding on Deadly Weapon: N/A |
|---|---|---|
| Finding of Family Violence: N/A | | Finding of Bias or Prejudice: N/A |
| Date Sentence Imposed: September 10, 2014 | | Court Costs: $339.00 |
| Punishment and Place of Confinement: 5 years TDCJID probated for 5 years; Fine of $3000.00 | | Date to Commence: September 10, 2014 |
| Time Credited: | | Total amount of Restitution/Reparation: $140.00 |

Name & address for
Restitution:  DPS Lab

Victim Impact
Statement Returned:

On the 4th day of August, 2014, the above numbered and entitled cause was called for trial, and the State appeared by the attorney stated above, and the Defendant and the Defendant's attorney, as stated above, were also present. Thereupon both sides announced ready for trial. A jury of twelve persons was duly selected, impaneled and sworn. The Defendant entered the above plea to the charging instrument after reading thereof. Having heard the indictment read, and the defendant's plea of not guilty thereto, the case proceeded to trial before the jury and after conclusion of the case and the jury having all the evidence submitted, the jury was duly charged by the Court and the Jury retired in charge of the proper officer to consider their verdict. The Jury after having reached a verdict in the guilt and innocence stage was brought into open Court by the proper officer in the presence of the defendant and his

counsel. The Jury in open Court and in due form announced that it had reached a verdict, which verdict was received by the Court and pronounced in open Court and entered into the minutes of the Court as follows, to-wit:

"VERDICT FORM #1

WE, the Jury, find the Defendant, ROBERT EUGENE PRITCHETT, guilty of the offense of possession of a controlled substance, as charged in the indictment.

/s/ Rickey Smith
Presiding Juror"

And thereupon, the Defendant elected to have his punishment assessed by the Court.

And thereupon the Court ordered a pre-sentence investigation to be done.

It is therefore ORDERED, ADJUDGED and DECREED by the Court that the defendant is guilty of the offense stated above, that there is an affirmative finding of a drug free zone, and that punishment has been sent by confinement in the Texas Department of Criminal Justice Institutional Division for five (5) years. It is, therefore, ORDERED by the Court that the imposition of the sentence in this case is hereby suspended. The Defendant is placed on community supervision for five (5) years, subject to the conditions of supervision imposed by the Court in an order that is hereby incorporated into this judgment.

It is therefore ORDERED, ADJUDGED and DECREED by the Court that the defendant is guilty of the offense of possession of a controlled substance drug free zone and that punishment be fixed and assessed as set forth above, and the State of Texas recover of said Defendant all court costs in this prosecution expended, for which execution will issue.

Furthermore, the following special findings or orders apply: none.

_____
Judge Presiding

Date Signed: _Sept. 11, 2014_

Defendant's right thumbprint:



APPENDIX "C"

## CAUSE NO. CR-8411

| THE STATE OF TEXAS | § | IN THE 273RD JUDICIAL DISTRICT |
|---|---|---|
| | § | |
| VS. | § | COURT OF |
| | § | |
| ROBERT EUGENE PRITCHETT | § | SAN AUGUSTINE COUNTY, TEXAS |

## TRIAL COURT'S CERTIFICATION OF DEFENDANT'S RIGHT OF APPEAL

I, Judge of the trial court, certify this criminal case:

✓ is not a plea-bargain case, and the Defendant has the right of appeal; (or)

_____ is a plea-bargain case, but matters were raised by written motion filed and ruled on before trial and not withdrawn or waived, the Defendant has the right to appeal; (or)

_____ is a plea-bargain case, but the trial court has given permission to appeal, and the Defendant has the right to appeal; (or)

_____ is a plea-bargain case, and the Defendant has NO right to appeal; (or)

_____ is a deferred adjudication case, and the Defendant has a limited right to appeal; (or)

_____ the Defendant has waived the right to appeal.

_____
JUDGE PRESIDING

9-10-2014
_____
DATE SIGNED

I acknowledge that I have been informed of the above Certification by the trial court and waive a receipt of a copy thereof.

_____
DEFENDANT

_____
ATTORNEY FOR DEFENDANT

**FILED**
AT 9:45 O'CLOCK __ M
9-10 20 14
JEAN STEPTOE District Clerk
SAN AUGUSTINE, TEXAS
BY _____

APPENDIX "D"

## CAUSE NO. <u>CR-8411</u>

| THE STATE OF TEXAS | § | IN THE 273RD JUDICIAL DISTRICT |
|---|---|---|
| VS. | § | COURT OF |
| ROBERT EUGENE PRITCHETT | § | SAN AUGUSTINE COUNTY, TEXAS |

### <u>WRITTEN NOTICE OF APPEAL</u>

TO THE HONORABLE JUDGE OF SAID COURT:

Now Comes Robert Eugene Pritchett, Appellant in the above styled and numbered cause, on this 7th day of October, 2014, and Appellant timely files this his written notice of appeal with said Court. Appellants's sentence and fine was imposed on the 10th day of September, 2014.

Appellant files this his written notice of appeal within thirty (30) days of sentence being imposed and pursuant to Vernon's Ann. Rules App. Proc. Rule 26.2 (a)(1) and Appellant files this his written notice of appeal based upon Appellant having been convicted by jury of Possession of a Controlled Substance in a Drug Free Zone and Appellant was sentenced to serve five (5) years regular probation and assessed a fine amount of Three Thousand Dollars - ($3,000.00). Appellant desires to appeal to the 12th Court of Appeals the trial court's judgment in this criminal conviction litigation.

**WHEREFORE PREMISES CONSIDERED**, Appellant respectfully requests that Appellant's Written Notice of Appeal be entered of record on this date.

**Entered** by Appellant's Attorney on this 7th day of October, 2014.

Respectfully submitted,

*Donovan Paul Dudinsky*
Donovan Paul Dudinsky
TSBN: 24038869
Attorney for Appellant,
Robert Eugene Pritchett

FILED
AT 10:30 O'CLOCK A M
10-7 2014
JEAN STEPTOE District Clerk
SAN AUGUSTINE TEXAS
BY _____



## _CERTIFICATE OF SERVICE_

Hereby certified that a true and correct file-stamped copy of the original document having been filed and thereby become dully recorded has been personally served by hand on this day of October 7, 2014, to the office of the District Attorney located in the 273rd Judicial District Courthouse of San Augustine County, Texas, San Augustine, Texas 75972.

Donovan Paul Dudinsky

APPENDIX "E"





